UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| KARON WARREN, DEBORAH KAPLAN, KIMBERLY KAVIN, and JENNIFER SINGER,<br><br>    Plaintiffs,<br>  v.<br><br>UNITED STATES DEPARTMENT OF LABOR; JULIE SU, as the acting U.S. Secretary of Labor; ADMINISTRATOR JESSICA LOOMAN, as the head of the U.S. Department of Labor's Wage and Hour Division; and U.S. DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,<br><br>    Defendants. | Civil Action No.<br><br>2:24-CV-0007-RWS<br><br>**COMPLAINT** |

## INTRODUCTION

1. This lawsuit seeks to vindicate the right of individual entrepreneurs to remain independent in the face of a concerted effort to force them into employment relationships they neither want nor need.

2. The Plaintiffs are freelance writers and editors who want to continue their work. They also seek to work with other freelancers as part of their successful businesses.

3. In 2021, the Department of Labor made their lives easier by announcing a clear standard for delineating between independent contractors and employees under the Fair Labor Standards Act.

4. Now the Department arbitrarily reverses course with a new rule that obscures the line between contractor and employee in an impenetrable fog.

5. The Department's vague, new standard provides no objective direction to anyone. It enables the Department's enforcement officers and trial lawyers to label anyone performing services for another company to be deemed an "employee" under essentially any circumstance.

6. Entrepreneurs and their clients must be able to understand the rules so they can structure their affairs to comply with the law. The Department's new rule makes this impossible.

## PARTIES

7. Plaintiff Karon Warren is a freelance writer and author from Ellijay, Georgia. Ms. Warren provides content for magazines, websites, and corporate brands. She is a member of the American Society of Journalists and Authors who volunteers her time to help coordinate freelance opportunities for other professional writers.

8. Plaintiff Deborah Abrams Kaplan is a freelance journalist and content marketing writer from Westfield, New Jersey. Ms. Kaplan writes

mostly in the medical, health, and supply chain fields. She writes articles for trade publications, print and web, in addition to writing annual reports, white papers, websites, and editing or ghostwriting articles for companies.

9. Plaintiff Kimberly Kavin is a freelance writer and editor from Washington Township, New Jersey. Ms. Kavin writes and edits content for magazines, newspapers, and corporate brands, and has authored multiple books. Ms. Kavin is a past president of the professional association Boating Writers International, whose membership includes many freelance writers.

10. Plaintiff Jennifer Singer is a freelance writer, writing coach, and editor from Red Bank, New Jersey. Ms. Singer works with professionals from all backgrounds and a variety of clients as a ghostwriter or editor, and sometimes hires other freelance writers or editors to work with her on specific projects.

11. Defendant U.S. Department of Labor is an agency of the United States, which is responsible for issuance of the challenged rule.

12. Defendant Julie Su is the Acting U.S. Secretary of Labor. Defendant Secretary Su is sued in her official capacity.

13. Defendant Administrator Jessica Looman is the head of the U.S. Department of Labor's Wage and Hour Division, which promulgated the challenged rule. Defendant Administrator Looman is sued in her official capacity.

14. Defendant U.S. Department of Labor, Wage and Hour Division, is an agency of the United States, which is responsible for issuance of the challenged rule.

15. Throughout this Complaint, Defendants are referred jointly as DOL or the Department except where otherwise specified.

## JURISDICTION AND VENUE

16. This action arises under the Administrative Procedures Act, 5 U.S.C. § 702, *et seq*. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question). Declaratory relief and injunctive relief are authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedure Act, 5 U.S.C. §§ 705, 706(2).

17. Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(2), (e)(1) because a Defendant resides in this judicial district, a plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS
### Legal Background
### I. The Fair Labor Standards Act

18. The Fair Labor Standards Act (FLSA) provides that certain employees are entitled to a minimum wage and overtime pay. Employers who fail to provide these benefits are subject to criminal penalties and civil liability. 29 U.S.C. §§ 201–219.

19. By contrast, independent contractors are not covered by the wage and hour provisions of the FLSA.

20. The FLSA is famously vague in its scope. The statute fails to provide an explicit definition for employee and defines employer in a circular fashion. 29 U.S.C. § 203.

21. The Supreme Court has previously held that the act "concerns itself with the correction of economic evils that were unknown at common law" and, accordingly, the act's scope must be broader than the common law agency relationship. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). The Supreme Court has further emphasized the significance of "economic realit[y]" and the "circumstances of the whole activity" in determining the scope of the Act. *Id.* at 727, 730.

**Prior Agency Actions**

22. Without statutory definitions or useful Supreme Court guidance, prior to 2021, businesses who wished to hire independent contractors had to rely on 70-plus years of tangled, case-by-case adjudications from lower courts to determine whether a worker would be covered by the FLSA. Court decisions from this era generally applied something called an "economic realities" test, examining five to seven factors in an open-ended balancing inquiry.

23. From 1938–2021, the Department's Wage and Hour Division, charged with enforcing the FLSA, issued only intermittent case-by-case

opinion letters, fact sheets, and other informal guidance on this issue, exacerbating an already confusing situation.

24. As the Department has explained, this sprawl of court decisions led to a situation with an "indefinite" test, which "ma[de] all facts potentially relevant without guidance on how to prioritize or balance different and sometimes competing considerations." 86 Fed. Reg. 1168, 1172 (Jan. 7 2021). This created considerable "confusion" for stakeholders. *Id.*

25. In an effort to provide clarity for workers and hiring entities, in January 2021, the Department finalized a new rule after notice and comment, entitled "Independent Contractor Status Under the Fair Labor Standards Act." 86 Fed. Reg. 1168 (2021 Rule). This rule was the first formal rulemaking that DOL undertook on the scope of the employment relationship under the FLSA.

26. The 2021 Rule emphasized two "core factors" when determining whether to classify an individual as an employee or independent contractor: (1) the nature and degree of the individual's control over the work; and (2) the individual's opportunity for profit or loss.

27. As the Department extensively explained, the two core factors are "more probative" of the underlying question of whether a worker is an employee and should carry greater weight in the analysis. 29 C.F.R. § 795.105. The Department cited many cases and conducted a thorough analysis to support its guidance on this crucial question. *See generally* 86 Fed. Reg. 1168.

28. The 2021 Rule provided clarity for stakeholders to create bona fide independent contractor relationships. 86 Fed. Reg. at 1207. The rule included an exhaustive study of facts, statutory, and other legal considerations in reaching its conclusion that the two core factors were needed to sharpen the test.

29. Following the changeover to the Biden Administration later in 2021, the DOL published proposals to delay and later withdraw the 2021 Rule, attributing its decisions to concerns about the rule's consistency with the FLSA and its potential impact on workers and businesses. *See* 86 Fed. Reg. 12,535 (Mar. 4, 2021; 86 Fed. Reg. 24,303 (May 6, 2021).

30. In March 2022, a district court in the Eastern District of Texas ruled against the DOL's delay and withdrawal actions for procedural violations, thereby reinstating the 2021 Rule. *See Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 WL 1073346, at *3 (E.D. Tex. Mar. 14, 2022).

**The New Rule**

31. On October 13, 2022, DOL announced a rulemaking to replace the 2021 Rule. 87 Fed. Reg. 62,218. This rule was finalized on January 10, 2024, and goes into effect on March 11, 2024. *See* 89 Fed. Reg. 1638 (2024 Rule).

32. The most important change under the 2024 Rule is the proposed rule's elimination of the "core factors." The rule insists that the use of core

factors improperly "predetermines" the analysis, and that the factors under an economic reality test must be entirely unweighted as a matter of law.

33. In addition, the rule adopts a new balancing test. 89 Fed. Reg. at 1742 (new 29 C.F.R. § 795.110). These factors include "opportunity for profit or loss depending on managerial skill"; "investments by the worker and the employer"; "degree of permanence of the work relationship"; "nature and degree of control'" "extent to which the work performed is an integral part of the employer's business"; and "skill and initiative." *Id.* The 2024 Rule also includes a seventh, catch-all factor, stating that "[a]dditional factors may be relevant … if the factors in some way indicate whether the worker is in business for themsel[ves]." *Id.*

34. The Department falsely claims that this test is a "return" to a test which is aligned with "federal appellate case law." 89 Fed. Reg. at 1640. But it is impossible to "align with" almost 80 years of tangled and contradictory circuit court decisions and Department guidance deciding cases under particular facts. In many places the Department cherry-picks language from cases it likes and discards cases it does not like. *See, e.g.*, 89 Fed. Reg. at 1679, 1688−89, 1704 (discussing contradictory case law and adopting one approach over another).

35. The one consistent refrain throughout the 2024 Rule is the Department's insistence that individual factors, no matter how they might be

weighed in the analysis, do not control, and cannot be evaluated, apart from the totality of the circumstances. *See, e.g.*, 89 Fed. Reg. at 1675, 1678, 1685 (diminishing importance of "one fact or factor" because each analysis will be conducted considering the "totality of the circumstances"). However, the Department also gives no idea how the actual balancing takes place, or how to weigh any specific factor or weigh any factor against another, instead insisting that to do so would be to unlawfully "predetermine" the analysis. *See, e.g.*, 89 Fed. Reg. at 1670.

36. The result is a freewheeling rule which embraces a multiplicity of factors and deliberately refuses to state what is important to the inquiry. The 2024 Rule, although it purports to be providing "consistent guidance," gives stakeholders no useful information whatsoever about how to structure their relationships. Stakeholders are effectively being told that anything about their business could be relevant, and the Department or a court are the only ones who can properly weigh the factors.

37. The new rule's test sees its vagueness as a feature, not a bug; as the rule expressly states:

> [The] factors are tools or guides to conduct a totality of the circumstances analysis. The … outcome of the analysis does not depend on isolated factors but rather on the circumstances of the whole activity. … Consistent with a totality-of-the-circumstances analysis, no one factor or

subset of factors is necessarily dispositive, and the weight to give each factor may depend on the facts and circumstances of the particular relationship. Moreover, these six factors are not exhaustive.

89 Fed. Reg. at 1742 (new 29 C.F.R. §§ 795.110). Even in the listing of the six factors, the rule expressly includes an additional, seventh catchall factor which makes clear that every and any possible fact could be relevant to the inquiry in an unspecified fashion. *Id.*

38. In reaching the conclusion that the core factors must go and the test must be a limitless, black box inquiry, the Department has relied upon an entirely legal justification: that the FLSA *requires* its freewheeling approach, and the 2021 Rule was impermissible as a matter of law. As the Department explained in the preamble to the notice of proposed rulemaking (NPRM): "*Regardless of the rationale for elevating two factors*, there is no legal support for doing so." 87 Fed. Reg. at 62,226 (emphasis added). *See also* 89 Fed. Reg. at 1650 ("[T]he Department continues to believe that the 2021 IC Rule was in tension with the Act, judicial precedent, and congressional intent. As the Department explained in the NPRM, there is no statutory basis for such a predetermined weighting of the factors ....").

**Injury to Plaintiffs**

39. In 2019, Plaintiffs founded the informal group Fight For Freelancers, a nonpartisan, self-funded, ad hoc coalition of solopreneurs, small

business owners, freelancers, and other independent contractors seeking to protect their ability to work independently from government overreach.

40. Fight For Freelancers and its members, including the plaintiffs, commented on the proposed rule, attended public hearings, and testified before Congress, expressing concerns about the Rule's effect on its member businesses.

41. In comments to the proposed rule, businesses, including the Fight For Freelancers, who regularly use independent contracting arrangements, expressed fears about the uncertainty associated with the rule's sprawling, multi-factor test. *See* 89 Fed. Reg. 1648 (observing that many comments from "business-affiliated stakeholders" and "self-identified independent contractors" opposed the Department's intention to rescind the 2021 Rule). Fight For Freelancers' comment considered each of the factors, asking rhetorical questions about what, specifically, they had to do in order to continue in business as independent contractors under the Rule's confusing factors. *See* Comment from Fight For Freelancers USA, WHD-2022-0003-47920 (Dec. 11, 2022). The final rule left most of their questions unanswered.

42. In response to comments about the uncertainty and vagueness created by the rule, the Department dismisses these issues, instead changing the topic to discuss hypothetical litigation risk associated with the 2021 Rule, due to its alleged conflicts with the FLSA. *See, e.g.,* 89 Fed. Reg. at 1655−56

(discussing "uncertainty" created by the 2021 Rule because of its alleged novelty and conflicts with case law, while rejecting stakeholder comments about how the 2021 Rule increased the standard's predictability). The Department does not explain how the alleged conflicts have created problems in the years that the 2021 Rule has been in effect, discussing only a handful of cases while acknowledging its own ability to pursue misclassification under the 2021 Rule. *See* 89 Fed. Reg. at 1658 ("The Department is not promulgating this rule because the 2021 IC Rule renders the Department powerless to enforce misclassification.").

43. In contrast with the Department's present approach, the Department explained in the 2021 Rule that the core factors create additional certainty for entrepreneurs and businesses while remaining consistent with the FLSA. These factors "drive at the heart of what is meant by being in business for oneself" and greatly simplify and focus the analysis for stakeholders. 86 Fed. Reg. at 1196–97. The Department's current rule has utterly ignored these important justifications.

44. Each of the Plaintiffs, based on their conversations with their clients and their prior experiences, has a reasonable fear that they will lose business due to uncertainty or fear of liability risks under the Department's new rule.

45. Each of the Plaintiffs expects to spend considerable time and effort reviewing the new rule and altering their business practices to protect themselves and their clients from risks of liability to the extent possible; however, they are worried there may be no way to safely arrange their relationships to avoid risks to their clients.

46. Each of the Plaintiffs will have to alter their business practices and expend resources in an effort to remain independent in order to keep clients.

47. Ms. Singer works with freelance writers and editors and is concerned about her ability to maintain those relationships as independent contractors after the new rule is finalized.

48. Under the 2021 Rule, Ms. Singer was able to confidently predict how her commercial relationships would be evaluated and could engage independent contractors without fear. Under the new rule, significant uncertainty has been created which will chill her future business practices.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(A)—ARBITRARY AND CAPRICIOUS

49. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

50. A court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

51. When an agency makes a rule based on its mistaken view of the law, the agency's action must be set aside. *See* 5 U.S.C. § 706(2)(A) (court must set aside agency action "otherwise not in accordance with law").

52. The rule must be set aside because the rule is based on a false premise. The Department's primary justification for the rule—that the 2021 Rule's core factors are in conflict with the FLSA—is false as a matter of law.

53. For reasons explained by the Department in the 2021 Rule, the use of core factors to evaluate the scope of the FLSA is entirely consistent with the FLSA and the Supreme Court's totality of the circumstances approach.

54. The rule is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is, therefore, invalid under 5 U.S.C. § 706(2)(A).

## SECOND CAUSE OF ACTION

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(C)—RULE IN EXCESS OF STATUTORY AUTHORITY

55. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

56. The Administrative Procedure Act (APA) directs a court to "hold unlawful and set aside" an agency's rule that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right" or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A), (B), (C).

57. The Department's interpretation of the FLSA as encapsulated by the rule is vague and amorphous. Businesses are given no useful guidance on the scope of the statute and cannot structure their conduct to comply with its demands.

58. This reading of the FLSA is untenable and inconsistent with the law's original meaning.

59. The final rule was issued in excess of statutory authority and is therefore invalid.

## THIRD CAUSE OF ACTION
## VIOLATION OF U.S. CONSTITUTION, VAGUENESS

60. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

61. The FLSA carries serious penalties for violations, up to and including criminal penalties. 29 U.S.C. § 216.

62. The Department's 2024 Rule fails to give stakeholders sufficient guidance about who is covered under the FLSA.

63. The rule violates the Constitution and is therefore invalid.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiffs demand judgment against Defendants as follows:

(i) The issuance of a preliminary injunction prohibiting Defendants from enforcing the final rule pursuant to 5 U.S.C. § 705 and 28 U.S.C. § 2201;

(ii) A declaratory judgment, pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. § 2202, holding unlawful and setting aside the final rule;

(iii) An award of attorneys' fees and costs to Plaintiffs; and

(iv) Any other relief as the Court deems just, equitable and proper.

DATED: January 16, 2024

Respectfully submitted,

WILSON C. FREEMAN
Ariz. Bar. No. 036953*
LUKE A. WAKE
Cal. Bar No. 264647*
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: wfreeman@pacificlegal.org
Email: lwake@pacificlegal.org

*/s/ Edward A. Bedard*
EDWARD A. BEDARD
Ga. Bar No. 926148
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, Georgia 30318
Telephone: (404) 856-3263
Fax: (404) 856-3255
Email: ebedard@robbinsfirm.com

*Pro Hac Vice forthcoming

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)

Counsel for Plaintiffs hereby certifies that this Complaint has been prepared in 13-point, Century Schoolbook font.

/s/ *Edward A. Bedard*
Edward A. Bedard