## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| KARON WARREN, DEBORAH KAPLAN, KIMBERLY KAVIN, and JENNIFER SINGER,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF LABOR; JULIE SU, as the acting U.S. Secretary of Labor; ADMINISTRATOR JESSICA LOOMAN, as the head of the U.S. Department of Labor's Wage and Hour Division; and U.S. DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION,<br><br>    Defendants. | No. 2:24-CV-0007-RWS |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ......................................................................... 1

BACKGROUND ........................................................................... 2

   I.    The Fair Labor Standards Act ........................................... 2

      A.   The text and history of the FLSA ................................... 3

      B.   Supreme Court precedent on employment and independent contracting ............................................................. 4

   II.   Agency Actions ............................................................. 8

      A.   The Department's 2021 Rule ...................................... 8

      B.   The Department's 2024 rule ....................................... 9

   III.  The Impact of the Rule on Plaintiffs' Businesses ................. 10

STANDARD OF REVIEW .............................................................. 11

ARGUMENT ............................................................................. 12

   I.    The Department's Withdrawal of the 2021 Rule Violates  the APA ... 12

      A.   The withdrawal is based on a flawed legal understanding the FLSA and the 2021 Rule itself ................................. 13

         1.   The 2021 Rule complied with and synthesized case law ................. 14

         2.   DOL's withdrawal ignores the need to give the FLSA a "fair reading" ................................................... 17

      B.   The withdrawal fails to consider clarity and certainty for the regulated community ............................................. 19

   II.   The Department's Replacement Rule Violates the APA ............ 22

CONCLUSION ........................................................................... 25

CERTIFICATE OF COMPLIANCE WITH LR 7.1(D) .................................. 27

CERTIFICATE OF SERVICE ........................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Blanco v. Samuel,*
  91 F.4th 1061 (11th Cir. 2024) .................................................................. 17

*Bond v. United States,*
  572 U.S. 844 (2014) ................................................................................... 18

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ................................................................................... 25

*Coal. for Workforce Innovation v. Walsh,*
  No. 1:21-CV-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ....... 9–10, 22

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020) .......................................................................... 13, 17

*Encino Motorcars, LLC v. Navarro,*
  584 U.S. 79 (2018) .......................................................................... 14, 17–19

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ..................................................................................... 2

*Hernandez v. Plastipak Packaging, Inc.,*
  15 F.4th 1321 (11th Cir. 2021) ............................................................ 17, 19

*Illinois Pub. Telecomms. Ass'n v. FCC,*
  117 F.3d 555 (D.C. Cir. 1997) .................................................................. 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ................................................................................... 20

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v.*
  *State Farm Mut. Auto Ins. Co.,*
  463 U.S. 29 (1983) ................................................................................ 13, 19

*NLRB v. Hearst Publications, Inc.,*
  322 U.S. 111 (1944) .......................................................................... 4–6, 15

*NLRB v. United Ins. Co. of Am.*,
  390 U.S. 254 (1968) ........................................................................ 6

*Prill v. NLRB*,
  755 F.2d 941 (D.C. Cir. 1985) ...................................................... 12

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947) ................................................................ *passim*

*Sackett v. EPA*,
  598 U.S. 651 (2023) ................................................ 19–20, 23, 25

*Safe Air for Everyone v. U.S. E.P.A.*,
  488 F.3d 1088 (9th Cir. 2007) ...................................................... 12

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308 (11th Cir. 2013) ...................................................... 7

*Sec. & Exch. Comm'n v. Chenery Corp.*,
  318 U.S. 80 (1943) ......................................................... 2, 12, 19

*Sec'y of Lab. v. Lauritzen*,
  835 F.2d 1529 (7th Cir. 1987) ...................................................... 7

*United States v. Ross*,
  848 F.3d 1129 (D.C. Cir. 2017) .................................................... 12

*United States v. Silk*,
  331 U.S. 704 (1947) ................................................................ *passim*

**Rule**

Fed. R. Civ. P. 56(a) ...................................................................... 12

**Regulations**

29 C.F.R. § 795.105 ...................................................................... 23

29 C.F.R. § 795.110 .............................................................. 10, 23

Independent Contractor Status Under the FLSA,
  85 Fed. Reg. 60,600 (Sept. 25, 2020) ...................................... 6, 8

Independent Contractor Status Under the FLSA,
  86 Fed. Reg. 1168 (Jan. 7, 2021) ......................................... *passim*

Employee or Independent Contractor Classification Under the
    FLSA, 87 Fed. Reg. 62,218 (Oct. 13, 2022)..................................... 10, 13–14

Employee or Independent Contractor Classification Under the
    FLSA, 89 Fed. Reg. 1638 (Jan. 10, 2024) ...........................................*passim*

## Statutes

5 U.S.C. § 706(2)(A) ........................................................................... 11

5 U.S.C. § 706(2)(B) ........................................................................... 11

28 U.S.C. § 2201................................................................................. 12

29 U.S.C. §§ 201–219 ...........................................................................2

29 U.S.C. § 203................................................................................... 17

29 U.S.C. § 203(d) ................................................................................3

29 U.S.C. § 203(e)(1) ............................................................................3

29 U.S.C. § 206(a) ................................................................................4

29 U.S.C. § 207(a)(1) ............................................................................4

42 U.S.C. § 410(j) .................................................................................6

## Other Authorities

Freelancers Cmt. (Dec. 12, 2022),
    https://www.regulations.gov/comment/WHD-2022-0003-47920 ............... 11

Restatement (First) of Agency (1933) .................................................................3

WHD Fact Sheet #13 (1997),
    https://web.archive.org/web/19970112162517/http:/www.dol.go
    v/dol/esa/public/regs/compliance/whd/whdfs13.htm ......................................8

**INTRODUCTION**

Plaintiffs are four freelance writers. They have no desire to be employees and their clients have no desire to employ them. The Department of Labor is threatening their livelihoods in a new regulation which reimagines the scope of the Fair Labor Standards Act (FLSA or Act) in order to restrict freelancing nationwide.

The FLSA requires employers to pay employees a minimum wage and overtime, but it does not provide clear definitions for key terms. For example, the Act only covers employees, but fails to explain how to distinguish "employees" from other types of workers, like independent contractors. Answering this question is essential for businesses to avoid unwanted liability, and freelancers must ensure they know how to remain independent to protect their clients. This issue has become more salient as independent contracting has become a more common way for people to earn a living.

In 2021, in the waning days of the Trump Administration, DOL promulgated a rule—through notice and comment rulemaking—adopting an interpretation of the FLSA that provided clear guidance to businesses and contractors alike. Comments from independent contractors indicated overwhelming support, appreciating the rule's clarity and uniformity in a confusing and difficult area of the law.

1

Despite the rule's clarity and consistency with the statute, the Department of Labor has now turned in the opposite direction. In January 2024, the Department announced it would be withdrawing the 2021 Rule and replacing it with a confusing and vague "know-it-when-we-see-it" rule based on cherrypicked statements drawn from 70 years of circuit court caselaw. When a federal agency completely changes its view of a statute, it must, at the very least, provide "good reasons" for such a change. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The agency not only lacks good reasons for its changes, but it relies almost exclusively on an incorrect understanding of the FLSA to justify all its actions. This mistaken legal understanding alone is enough reason to set the rule aside. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943). Furthermore, the Department's replacement rule is so deliberately vague that it cannot be a reasonable reading of the FLSA, particularly since the Department claims—illogically—that the purpose of the rule is to increase clarity. The rule must be set aside.

## BACKGROUND

### I.   The Fair Labor Standards Act

The Fair Labor Standards Act (FLSA), established in 1938, is the premier federal labor law. The FLSA provides that certain employees are entitled to a minimum wage and overtime pay. Employers who fail to provide

these benefits to their employees are potentially subject to criminal penalties and substantial civil liability. 29 U.S.C. §§ 201–219.

Despite the importance of this law, its scope is uncertain and has resulted in frequent litigation. In its 2021 Rule, the Department estimated that uncertainty over independent contractor status generated almost 10% of all FLSA litigation, totaling approximately 700 cases a year. Independent Contractor Status Under the FLSA, 86 Fed. Reg. 1168, 1234 (Jan. 7, 2021).

### A. The text and history of the FLSA

"Independent contracting" is not new; the First Restatement of Agency defined an "independent contractor" as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance." Restatement (First) of Agency § 2 (1933). The Restatement contrasts this relationship with a "servant," defined as "a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." *Id.*

Although the concept was well known, the FLSA did not mention independent contractors. Instead, the law provides only tautological definitions for "employee" and "employer." *See* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer

in relation to an employee … but does not include any labor organization"); 29 U.S.C. § 203(e)(1) ("Except as provided [in certain specified contexts] the term 'employee' means any individual employed by an employer."). While the law requires "employer[s]" to "pay to each of his employees" a minimum wage, and also prohibits "employer[s]" from "employ[ing]" any "employee" in a workweek longer than forty hours without paying time-and-a-half, 29 U.S.C. §§ 206(a), 207(a)(1), it does not impose *any* obligations on companies for their work with independent contractors. But there is also no test in the text for distinguishing between employees and independent contractors.

### B. Supreme Court precedent on employment and independent contracting

Despite no mention of independent contracting in the FLSA, the Supreme Court has long recognized that not every person providing a service is an employee, and there is a place for independent contracting outside the scope of the FLSA. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). However, the Court has not articulated a clear test. This doctrinal void has created significant uncertainty.

In a handful of cases from the late 1940's, the Supreme Court explored the scope of the employer-employee relationship under three different federal statutes: the National Labor Relations Act (NLRA), the Social Security Act, and lastly, the FLSA itself. In the first of these cases, *NLRB v. Hearst*

4

*Publications, Inc.*, 322 U.S. 111 (1944), the Court considered whether the NLRA, which governs unions and collective bargaining, required Los Angeles area daily newspapers to bargain collectively with newsboys who distributed their papers, who they maintained were not their employees. *Id.* at 113. The Court held that Congress was trying to create a "broad solution," "so far as its power could reach," and that employment should apply where "the conditions of the relation require protection." *Id.* at 125–29.

The Supreme Court considered the issue again in *United States v. Silk*, 331 U.S. 704 (1947), which addressed the distinction between employees and independent contractors under the Social Security Act. The Court addressed whether coal unloaders and truckers were independent contractors or employees. The Court discussed several factors that could be important for deciding which workers were independent contractors versus employees: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation." *Id.* at 716. The Court stated that there may be other factors and that no factor could be controlling. *Id.* Reviewing the facts, the Court held the unloaders were employees, but the truckers, because they owned their own trucks and controlled the work, were independent. *Id.* at 718–19.

The same day *Silk* was decided, the Court also decided *Rutherford*, which was the first Supreme Court case to evaluate whether a worker was an

5

employee or independent contractor under the FLSA. There, the Court determined that meat boners, working on an assembly line, were employees under the FLSA. 331 U.S. at 728–29. Although the Court relied expressly on *Hearst* and *Silk*, *Rutherford* did not adopt any particular test and did not recite the "factors" listed in *Silk*.

*Rutherford* has been the definitive statement on the line between independent contractor and employee under the FLSA since 1947, but its opacity and split from the common law created considerable uncertainty. To add to the uncertainty, Congress immediately undermined the doctrinal foundations of *Rutherford* by amending the NLRA mere days after *Rutherford* was decided, completely abrogating *Hearst. See NLRB v. United Ins. Co. of Am.,* 390 U.S. 254, 256 (1968) (recognizing abrogation). About a year later, Congress abrogated *Silk* in the same way. *See* 42 U.S.C. § 410(j) ("The term 'employee' [under the SSA] means ... any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.").

Since the 1940's, the Supreme Court has not directly considered the FLSA classification question, nor mandated any specific set of factors to be considered to determine whether a worker is employed for purposes of the FLSA. *See* Independent Contractor Status Under the FLSA, 85 Fed. Reg. 60,600, 60,602 (Sept. 25, 2020).

6

Lacking clear Supreme Court guidance, lower courts (prior to the 2021 Rule) have settled on applying a version of the *Silk* test to answer this question, which they refer to as the "economic reality test." Various courts articulate different variations on this test, but the Eleventh Circuit test is typical, relying on six factors, including

(1) the nature and degree of the alleged employer's control ...;
(2) the alleged employee's opportunity for profit or loss ...;
(3) the alleged employee's investment in equipment or materials required for his task ...;
(4) whether the service rendered requires a special skill;
(5) the degree of permanency and duration of the working relationship;
(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). Courts often recite that these factors are "not exclusive," and mere "guides" to the underlying question of whether a worker is "in business for himself." *Id.*

Despite courts calling this the "economic reality" test, none are able to articulate "which aspects of 'economic reality' matter, and why." *Sec'y of Lab. v. Lauritzen*, 835 F.2d 1529, 1549 (7th Cir. 1987) (Easterbrook, J., concurring). This test has only been successful at producing litigation and uncertainty. Resolving this uncertainty has become more important as independent contracting becomes more prominent in the wider economy. *See* 86 Fed. Reg. at 1175.

7

## II.    Agency Actions

Despite the Supreme Court's relative silence, until 2021, DOL never promulgated a uniform statement of the scope of the FLSA. Instead, DOL has only issued intermittent "opinion letters" and "fact sheets." *See* 85 Fed. Reg. at 60,604. These opinion letters and fact sheets have articulated various formulations of the economic reality test, derived from the Supreme Court's language in *Silk* and circuit court opinions on the issue. For example, in Fact Sheet #13, originally issued in 1997, WHD listed seven factors as significant but stated that "it is the total activity or situation which controls."[1] None of these prior agency actions involved notice and comment, and none were codified in the C.F.R.

### A. The Department's 2021 Rule

Recognizing the void in definitive guidance, in early 2021, DOL promulgated a final rule after notice and comment addressing independent contractor status. 86 Fed. Reg. at 1172. The test adopted by the agency was based on a thorough review of case law and sought to "clarify and sharpen" the focus of the economic reality test. *Id.* Based on that analysis, DOL determined that two "core" factors—the nature and degree of control over work and the individual's opportunity for profit or loss—were the "most probative" of

---

[1] WHD Fact Sheet #13 (1997),
https://web.archive.org/web/19970112162517/http:/www.dol.gov/dol/esa/public
/regs/compliance/whd/whdfs13.htm.

whether a worker was truly independent. *Id.* at 1246–47. DOL reviewed every circuit court case since 1975 and determined that where these two factors pointed in the same direction, courts uniformly had concluded that was the accurate classification. *Id.* at 1196–97. Accordingly, the rule provided that where these core factors were present, "there is a substantial likelihood that is the individual's accurate classification." *Id.* at 1246.

This prioritization on the core factors in no way discarded the need to look at the totality of the circumstances. DOL listed three other factors—skill, permanence, and whether the work is part of an "integrated unit of production"—but indicated these factors were generally less probative, and, in some cases, not probative at all. *Id.* DOL further stated that the "[t]hese factors are not exhaustive, and no single factor is dispositive." *Id.* The ultimate inquiry, DOL explained, was whether the worker was, "as a matter of economic reality, in business for him- or herself." *Id.*

### B. The Department's 2024 rule

After the change in administrations, the Department postponed the effective date of the 2021 Rule and then issued a final rule, without notice and comment, withdrawing the 2021 Rule. 86 Fed. Reg. at 24,303. This withdrawal rule was vacated by a court in Texas because "DOL failed to consider important aspects of the problem." *See Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 WL 1073346, at *18–19 (E.D. Tex. Mar. 14, 2022). In particular,

DOL failed to consider the extent to which the rule provided clarity and certainty for regulated parties. *Id.*

Following this ruling, DOL issued a notice of proposed rulemaking in late 2022, seeking to withdraw the 2021 Rule and impose a new multi-factor framework in its place. *See* Employee or Independent Contractor Classification Under the FLSA, 87 Fed. Reg. 62,218, 62,218 (Oct. 13, 2022). DOL's final rule was published on January 10, 2024, and became effective on March 11, 2024. The new test is a freewheeling, totality-of-the-circumstances test that employs seven factors—six numbered factors and one catchall factor. Employee or Independent Contractor Classification Under the FLSA, 89 Fed. Reg. 1638, 1742–43 (Jan. 10, 2024) (29 C.F.R. § 795.110).

## III.   The Impact of the Rule on Plaintiffs' Businesses

Plaintiffs are independent contractors whose businesses have been, and will continue to be, disrupted by the Department's sudden shift to this uncertain and volatile policy. They are cofounders of Fight for Freelancers, a nonpartisan, self-funded, ad hoc coalition of solopreneurs, small business owners, freelancers, and other independent contractors seeking to protect their ability to work independently from government overreach. *See* Warren Decl. ¶ 8; Kavin Decl. ¶ 9; Kaplan Decl. ¶ 7; Singer Decl. ¶ 5. Under that name,

Plaintiffs filed a comment in the administrative record voicing numerous concerns with the proposed rule's effect on their business.[2]

As a result of the rule, Plaintiffs have had to renegotiate contracts, change business practices, terminate freelancers working for them, and undertake other expenses to protect themselves and their clients from liability under the FLSA. *See generally* Statement of Undisputed Material Facts at ¶¶ 9–12. Plaintiffs' businesses would benefit from a more certain, clear rule. The prior rule's emphasis on core factors and other aspects sharpening the standard provided predictability for their businesses and for their clients. *See, e.g.*, Warren Decl. ¶ 11; Kavin Decl. ¶¶ 14–15; Kaplan Decl. ¶ 10; Singer Decl. ¶¶ 7–9. The withdrawal of that rule and the turn to a polar opposite policy has left Plaintiffs unable to know if their livelihood is legal and unable to protect their clients.

## STANDARD OF REVIEW

Under the Administrative Procedure Act a court must set aside and vacate agency action if it is not in accordance with law, 5 U.S.C. § 706(2)(A), or contrary to any constitutional right, power, privilege, or immunity, *id.* § 706(2)(B). Plaintiffs must show that the Department lacked authority for the Final Rule. The Court must "grant summary judgment if the movant shows

---

[2] *See* Fight for Freelancers Cmt. (Dec. 12, 2022),
https://www.regulations.gov/comment/WHD-2022-0003-47920.

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs are entitled to declaratory relief to clarify their rights to the extent there is a justiciable controversy. 28 U.S.C. § 2201.

## ARGUMENT

### I. The Department's Withdrawal of the 2021 Rule Violates the APA

DOL's main justification for the withdrawal is that the 2021 Rule violated the law: DOL essentially argues that the usage of two core factors is inconsistent with the FLSA. 89 Fed. Reg. at 1647 ("[T]he Department believes that the 2021 IC Rule did not fully comport with the FLSA's text and purpose."). When an agency acts based on a legal premise, and that premise is false, the agency's action must be set aside. *See, e.g.*, *Chenery*, 318 U.S. at 94. *See also United States v. Ross*, 848 F.3d 1129, 1134 (D.C. Cir. 2017) ("Where a statute grants an agency discretion but the agency erroneously believes it is bound to a specific decision, we can't uphold the result as an exercise of the discretion that the agency disavows."); *Safe Air for Everyone v. U.S. E.P.A.*, 488 F.3d 1088, 1101 (9th Cir. 2007) ("We have held EPA's conclusion … legally erroneous. Because that flawed premise is fundamental … EPA's outcome on those statutory interpretation questions is 'arbitrary, capricious, or otherwise not in accordance with law.'"); *Prill v. NLRB*, 755 F.2d 941, 948 (D.C. Cir. 1985) ("If a regulation is based on an incorrect view of applicable law, the regulation

cannot stand …."). Here, for all the many reasoned justifications stated in DOL's 2021 Rule, it was plainly consistent with a fair reading of the FLSA. This alone is enough reason to set aside the withdrawal.

Beyond its flawed legal justification, DOL argues that withdrawing the 2021 Rule will "reduce[] confusion" while providing "clarity." 89 Fed. Reg. at 1648–49; 1653–56, 1661, 1739. This justification is nonsense. The 2021 Rule had the clarity of the core factors. The new rule mandates a rudderless test with no guidance and no prioritization. This refusal to consider the previous rule's primary benefits in this area while running in the opposite direction violates the APA. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1910–11 (2020); *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 44 (1983).

### A. The withdrawal is based on a flawed legal understanding the FLSA and the 2021 Rule itself

The agency's justification for withdrawing the 2021 Rule is based on a legal conclusion that the Rule's use of core factors violates the FLSA. As the Department stated in the NPRM announcing the withdrawal, "giving extra weight to two factors cannot be harmonized with decades of case law and guidance from the Department." 87 Fed. Reg. at 62,226. The Department was explicit that this legal conclusion overrode any other considerations: "[R]egardless of the rationale for elevating two factors, there is no legal support

13

for doing so." *Id.* The Department's legal conclusion was repeatedly reaffirmed throughout the final rule. *See, e.g.*, 89 Fed. Reg. at 1638–39, 1647, 1663–64.

The DOL's rejection of its own past analysis is fatally flawed for two main reasons. First, the 2021 Rule's use of "core" factors is wholly consistent with Supreme Court precedent on the FLSA and was expressly based on a careful reading and synthesis of those principles against the background of decades of circuit court precedent. The DOL's explanation for its withdrawal rule makes no attempt to synthesize these cases, but instead emphasizes courts' recitation of a totality of the circumstances test, divorced from the context of those decisions.

Second, under a fair reading of the FLSA, control and opportunity for profit are correctly considered more probative of whether a worker is an "employee" than any other factors. The 2021 Rule properly focuses its statutory interpretation on this fundamental question. DOL's only answer to this is to fall back on the FLSA's "remedial purpose." But the Supreme Court has rejected this principle as a "useful guidepost for interpreting the FLSA." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).

### 1.  The 2021 Rule complied with and synthesized case law

DOL misinterprets both case law and the 2021 Rule when it says that the 2021 Rule is "contrary" to precedent. 89 Fed. Reg. at 1644, 1650–51. That precedent is primarily *Rutherford*, and that case did not articulate a particular

14

test or procedure. Relying on *Hearst* and *Silk*, *Rutherford* explained that the act's scope must be broader than the common law agency relationship and that courts must consider the "circumstances of the whole activity." 331 U.S. at 730. There is no question that the withdrawn rule is broader than the common law control test—on its face it considers as core both control *and* opportunity for profit, alongside three other factors. 86 Fed. Reg. at 1246–47. Considering two factors as "more probative" does not "effectively (and impermissibly) adopt[] a common law test for independent contractor status." 89 Fed. Reg. at 1650. The 2021 Rule also leaves the door open to consider all the circumstances, 86 Fed. Reg. at 1246 ("These factors are not exhaustive, and no single factor is dispositive."), and instructs that the core factors analysis is subsidiary to the overarching economic dependence inquiry. *Id.*

The need to consider all the circumstances does not require weighing factors "equally," as the 2021 Rule recognized. *See* 86 Fed. Reg. at 1201 ("While all circumstances must be considered, it does not follow that all circumstances or categories of circumstance, i.e., factors, must also be given equal weight."). As *Rutherford* itself shows, the Court has always understood that some facts are more significant than others. Even in *Silk*, the very case that announced the five economic reality factors, the Court did not treat those factors equally. *Silk*, 331 U.S. at 716. Instead, the Court emphasized the most probative factors, such as control and the opportunity for profit, while de-emphasizing

15

insignificant facts, like the hours worked. *Id. at* 719. Similarly, in *Rutherford*, the Court emphasized particular facts as more probative, and emphasized those facts—in particular, facts relating to control and supervision. 331 U.S. at 730–31. Accordingly, the 2021 Rule is faithful to both the analysis and the outcomes in *Rutherford* and *Silk*, while providing stakeholders with additional guidance and prioritization.

DOL's counterargument conversely focuses on cherry-picked language in subsequent circuit court decisions. But the 2021 Rule extensively analyzed those cases too. It evaluated every appellate court decision going back to 1975 and found that in *every* case where "opportunity for profit" and "control" pointed toward the same classification, courts identified that as the correct classification. 86 Fed. Reg. at 1196–97. DOL does not meaningfully contest this analysis, instead relying on the hortatory recitation of the "totality of the circumstances" language from those cases. But scattered statements from circuit courts over 70 years do not control the Department's understanding of the FLSA. Rather, the Department's role is to interpret the statute and provide guidance to the regulated community.

Ultimately, DOL's flaw in its 2024 Rule is prioritizing the gloss applied to the FLSA by lower courts as predominating over its obligation to synthesize those cases into a coherent and useful whole. An agency acts arbitrarily where

it does not "appreciate the full scope of [its] discretion." *Regents*, 140 S. Ct. at 1910–11.

### 2. DOL's withdrawal ignores the need to give the FLSA a "fair reading"

The 2021 Rule answers the fundamental statutory question—whether a worker is "employed" or not. 29 U.S.C. § 203. DOL's belief that the rule conflicts with the FLSA rests on substituting the statutory purpose and circuit court dicta over the statutory text, which DOL barely considers at all.

For decades, courts and the Department rested expansive, atextual interpretations of the FLSA on the statute's alleged remedial purpose. But in a case concerning the scope of an FLSA exemption for car dealership employees, the Supreme Court squarely rejected that "remedial purpose" could be a useful guidepost for interpreting the FLSA. *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018). In the wake of *Encino Motorcars*, there is no question that the FLSA—including provisions governing its scope—must be read "fairly." *See Blanco v. Samuel*, 91 F.4th 1061, 1071 (11th Cir. 2024) ("In the past, courts had construed the exemptions narrowly against the employers asserting them …. But we no longer do so after the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro* …."); *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1330 (11th Cir. 2021) (recognizing courts must give the whole FLSA "a fair reading").

17

Applying that fair reading principle, the 2021 Rule correctly understands that the core question being asked is how to interpret statutory terms, in particular, the terms "employee" and "employer." The plain text of the law uses the words "employee" and "employer" without further meaningful explication, suggesting that Congress meant to incorporate, in some way, the long-established understanding of those terms. *See Bond v. United States*, 572 U.S. 844, 857 (2014) ("Part of a fair reading of statutory text is recognizing that Congress legislates against the backdrop of certain unexpressed presumptions."). While *Rutherford* forbids courts from adopting the common law test, it cannot discard the statutory language. Since the fundamental statutory question is whether a worker is "employed" or not, the presence or absence of facts which would suggest a common law employment relationship is clearly more relevant to that determination than most other factors. In the 2021 Rule, the Department acknowledged this, and explained its interpretation was based, in part, on "commonsense logic that, when determining whether an individual is in business for him- or herself, the extent of the individual's control over his or her work is more useful information than, for example, the skill required for that work." 86 Fed. Reg. at 1199.

The Department's withdrawal fails to even address this point. Instead, the Department again retreats to random circuit court quotations, along with the principle—rejected in *Encino Motorcars*—that the purpose of the FLSA

18

requires a broad interpretation.[3] *See* 89 Fed. Reg. at 1668 n.221. *See also id.* at 1640 (emphasizing importance of FLSA's purpose in withdrawal); 1647; 1649; 1661; 1668; 1724; 1725; 1726 (same).

But in this overarching and repeated reliance on statutory purpose the Department is in direct conflict with a recent Supreme Court case. This error of law, alone, requires the rule be set aside. *See Chenery*, 318 U.S. at 94.

## B. The withdrawal fails to consider clarity and certainty for the regulated community

Besides being a fair reading of the language of the statute, the 2021 Rule offered stakeholders clarity and allowed workers and employers to know their obligations. DOL's withdrawal fails to consider this type of regulatory certainty. This major gap in DOL's analysis renders its withdrawal arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 56.

As the Supreme Court has explained, agency interpretations must have "sufficient definiteness that ordinary people can understand what conduct is prohibited" and in a way so as to discourage "arbitrary and discriminatory enforcement." *Sackett v. EPA*, 598 U.S. 651, 680–81 (2023). In *Sackett*, which concerned the scope of the Clean Water Act, the Supreme Court rejected the

---

[3] In the Department's only reference to *Encino Motorcars*, it argues that the case should be read to apply only to FLSA "exemptions" and not "definitions." 89 Fed. Reg. at 1668 n.221. But the Eleventh Circuit has already rejected the argument that *Encino Motorcars* is so limited. *See Hernandez*, 15 F.4th at 1329.

"hopelessly indeterminate" standard advanced by the EPA for determining the scope of the "waters of the United States." *Id.* Facing the threat of "severe criminal sanctions," the Court observed that landowners were left to "feel their way on a case-by-case basis" as to whether their waters were covered by the Act. *Id.* The Court observed that this interpretation ran up against the "background principle[] of construction" that statutes should be interpreted to avoid vagueness problems. *Id.* at 679.

The FLSA is a criminal statute which governs millions of employers and affects many millions more employees. By 2021, after seventy years of sprawling case law, with no clarity added by the Department or by the Supreme Court, the so-called economic reality test was creating unnecessary confusion and litigation. To correct this problem, the 2021 Rule placed the focus on two core factors—instead of the unfocused inquiry into five, six, or seven contradictory and confusing factors often applied in case law. *See* 86 Fed. Reg. at 1172–75. It did not discard other facts as potentially important in the right circumstance, but it is axiomatic that prioritizing two factors is simpler than an unfocused and unweighted six-factor totality of the circumstances test. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014) (observing that "open-ended balancing tests[] can yield unpredictable and at times arbitrary results"). Unsurprisingly, therefore, the "overwhelming

majority" of independent contractors who commented on the 2021 Rule supported it. 86 Fed. Reg. at 1171–72.

By contrast, in its decision to withdraw the rule DOL gave no weight to this clarity for stakeholders. Instead, DOL asserted that the clarity of the 2021 Rule was outweighed by uncertainty in the extent to which federal courts would agree with DOL's interpretation. 89 Fed. Reg. at 1639 ("Because the 2021 IC Rule departed from legal precedent, it was not clear whether courts would adopt its analysis … resulting in more uncertainty as to the applicable test."). But this response is unavailing for at least three reasons.

First, the 2021 Rule bound the agency itself in its capacity as an enforcer of the FLSA and offered safe harbor to businesses who relied on its guidance. 86 Fed. Reg. at 1246. Accordingly, the 2021 Rule—by its very terms—offered at least some certainty and protection to businesses. If a court had chosen not to adopt the 2021 Rule's analysis, or even if a court were to set the rule aside, those businesses would still have been able to claim safe harbor and protection from DOL enforcement.

Second, the concerns about court reactions to the 2021 Rule are baseless. No court meaningfully questioned the substance of its reasoning in the three years it was in effect—although DOL correctly notes that a handful of courts reacted to DOL's ongoing recission as a reason to doubt the validity of the rule. 89 Fed. Reg. at 1655 n.150. Indeed, the only court decision to address the

21

substance of the 2021 Rule recognized that the rule was "consistent with the existing case law." *Coalition for Workforce Innovation*, 2022 WL 1073346, at *16–17. The Department does nothing to show that a hypothetical litigation risk outweighs the benefits to stakeholders of a more concrete standard.

Third, any "uncertainty" that might exist from the possibility that courts would fail to adopt the rule simply has no bearing on the Due Process-type concerns that the 2021 Rule is addressing. It is a non-sequitur. The Department has an obligation under the Constitution to promulgate an interpretation that allows parties to conform their conduct to the law. The Department cannot respond to this responsibility by pointing to hypothetical prudential considerations about future court action. And this is especially true since the Department is walking headlong into several serious legal challenges to its own rule. If litigation over the scope of the FLSA was inevitable, the Department cannot claim that avoiding litigation as a reason for to its rule to abandon the benefits of clarity.

## II.   The Department's Replacement Rule Violates the APA

Beyond the myriad problems with the withdrawal of the 2021 Rule, DOL's replacement rule—a novel, seven-factor totality of the circumstances test never before articulated by any court—rests on mistakes of law and inadequate justification and thus violates the APA. This freewheeling test presents businesses and contractors with an impossible Justice Potter Stewart

"know-it-when-we-see-it" inquiry. Simultaneously, the Department rewrites 70 years of FLSA precedent with its own preferred and cherry-picked story, all while claiming—without support—that its rule will provide "clarity on the concept of economic dependence." 89 Fed. Reg. at 1649. This lack of internal consistency is the hallmark of arbitrary and capricious action. *See, e.g.*, *Illinois Pub. Telecomms. Ass'n v. FCC*, 117 F.3d 555, 566 (D.C. Cir. 1997) ("seemingly illogical" decisions are arbitrary and capricious).

The Department of Labor has replaced the 2021 Rule with a rule that, like the rule overturned by the Supreme Court in *Sackett*, is "freewheeling" and forces regulated parties to feel their way "case-by-case." *Id.* at 680. The revised C.F.R. mentions the "totality of the circumstances" or "circumstances of the whole activity" multiple times; it says "no one factor or subset of factors" is dispositive; the rule gives no guidance on the weight to be given to particular factors even in particular circumstances; and the rule specifically has a seventh factor which opens the door to every other possible fact, stating that "[a]dditional factors may be relevant" if those factors "in some way" are relevant to the inquiry. 29 C.F.R. §§ 795.105–110. Stakeholders are left with no indication of how to balance these factors against each other or how to prioritize particular facts within the factors. The Department does not even try to explain or justify this approach, wrongly implying that a standardless

balancing test is *compelled* by the FLSA. This is an utter abdication of the Department's duty to interpret the statute.

Furthermore, the Department engages in repeated misinterpretation and cherry-picking to artificially place a thumb on the scale against independent contractor status. For example, under the control factor, DOL makes major changes to the way courts and the Department previously understood the "control" factor, diminishing the importance of that factor and expanding the concept to increase the number of workers classified as employees. 89 Fed. Reg. at 1670. The Department's rule now states that control relates to the "the performance of the work and the economic aspects of the working relationship"—a phrase that appears nowhere in *Silk*, *Rutherford*, or any circuit court case. *Id.* at 1743. Similarly, DOL warps the "integral" factor— previously the "integrated unit of production" factor—now stating that this factor weighs against independent contractor status if the work is "critical, necessary, or central" to the business. *Id.* Again, this language does not appear in any Supreme Court case—the Department relies on context-free references to circuit courts that used similar language, even if it was not essential to those courts' holdings. *Id.* at 1655. Justifications for major changes based solely on isolated, out-of-context circuit quotations are replete in the rule and cannot be considered reasoned decision-making or statutory interpretation.

24

Agencies cannot promulgate "vague and open-ended regulations that they can later interpret as they see fit." *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012). As discussed above, the Supreme Court has stated unequivocally that agency interpretations of criminal statutes must have "sufficient definiteness that ordinary people can understand what conduct is prohibited" and interpretations should discourage "arbitrary and discriminatory enforcement." *Sackett*, 598 U.S. at 680–81 (citation omitted). The Department's mess of a rule falls into precisely this trap, and it does so while stating its purpose is to increase clarity. This is simply not credible, particularly while the Department unilaterally discards all the precedent it does not like to erect its preferred, cherry-picked history of the scope of the FLSA.

## CONCLUSION

For each of the reasons set forth above, this Court should grant Plaintiffs' motion for summary judgment and declare unlawful and set aside DOL's rescission of the 2021 Rule and its promulgation of the 2024 Rule; declare that the 2021 Rule is still in effect; and enjoin DOL from enforcing the 2024 Rule.

DATED: April 29, 2024.

Respectfully submitted,

*/s/ Edward Bedard*

EDWARD BEDARD
Ga. Bar No. 926148
Robbins Alloy Belinfante Littlefield
LLC
500 14th Street, NW
Atlanta, Georgia 30318
Telephone: (404) 856-3263
Facsimile: (404) 856-3255
Email: ebedard@robbinsfirm.com

*/s/ Wilson C. Freeman*

WILSON C. FREEMAN
Ariz. Bar. No. 036953*
LUKE A. WAKE
Cal. Bar No. 264647*
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: wfreeman@pacificlegal.org
Email: lwake@pacificlegal.org

*Pro Hac Vice*

*Counsel for Plaintiffs*

26

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)

Counsel for Plaintiffs hereby certifies that this brief has been prepared in 13-point, Century Schoolbook font.

*/s/ Wilson C. Freeman*_____
WILSON C. FREEMAN

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I served this document via the Court's electronic filing system and/or via U.S. Mail to the Defendants.

*/s/ Wilson C. Freeman*
WILSON C. FREEMAN