UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINSVILLE DIVISION

| | |
|---|---|
| WARREN, *et al.*,<br>　　　　Plaintiffs,<br>v.<br>UNITED STATES DEPARTMENT<br>　　OF LABOR, *et al.*,<br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
2:24-cv-00007-RWS

**DEFENDANTS' CONSOLIDATED BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT
OF DEFENDANTS' CROSS-MOTION TO DISMISS OR ALTERNATIVELY
FOR SUMMARY JUDGMENT**[1]

**INTRODUCTION**

The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA" or "Act"),

was enacted in 1938 to eliminate "labor conditions detrimental to the maintenance

of the minimum standard of living necessary for health, efficiency, and general well-

being of workers."  29 U.S.C. § 202.  To this end, the FLSA requires employers to

pay a minimum wage and overtime pay to workers who are "employees" under the

Act; based on judicial interpretation, this includes workers who, as a matter of

economic reality, are economically dependent on the employer for work, rather than

independent contractors who are in business for themselves.  The interpretive

---

[1] This same brief is being filed in opposition to plaintiffs' motion and in support of
defendants' cross-motion.

guidance at issue in this litigation[2] is rooted in decades of Supreme Court and federal circuit court precedent (including in this Circuit), and the Department of Labor's ("DOL's") own previous subregulatory guidance.  The 2024 Rule provides specific factors to guide DOL's assessment of the "economic realities" of the working relationship to determine whether a worker is an employee or an independent contractor.  29 C.F.R. §§ 795.105(b), 110.

As courts have acknowledged, the analysis is not based on "any formalistic or simplistic approach."  *Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311 (5th Cir. 1976).[3]   Instead, it depends on "all the circumstances" of each employment relationship to determine the worker's degree of economic dependence on the employer.  *See Scantland,* 721 F.3d at 1311.  In accord with decades of judicial precedent and DOL's previous subregulatory guidance, the 2024 Rule provides regulatory explanations of each of the factors that are analyzed to evaluate the "totality of the circumstances."

---

[2] *See* Employee or Independent Contractor Classification Under the Fair Labor Standards Act, 89 Fed. Reg. ("FR") 1638-01 (Jan. 10, 2024) (adding 29 C.F.R. Part 795) ("2024 Rule").

[3] Decisions from the former Fifth Circuit predating the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 n.1 (11th Cir. 2013).

The 2024 Rule also rescinded the rule that DOL had published in January 2021.[4]  *See* 89 FR 1639.  The 2021 Rule had narrowed the set of factors historically used by courts in the economic reality analysis in favor of two "core factors" that the 2021 Rule declared "most probative."  This approach reflected a departure from the analysis established by decades of judicial precedent.  It relegated certain factors and excluded from consideration certain facts which had previously been understood by courts and DOL as relevant to determining whether a worker is an employee or independent contractor under a totality-of-the-circumstances analysis.   DOL determined that these changes by the 2021 Rule would have had a confusing and disruptive effect on workers and businesses alike and were contrary to longstanding precedent and the text of the Act as interpreted by courts.

Lacking Article III standing and simply based on a disagreement with DOL's reasonable interpretations, plaintiffs ask the Court to invalidate the 2024 Rule.  Plaintiffs' alleged injuries are purely hypothetical, and their speculative allegations of harm are particularly implausible given that plaintiffs operated for years prior to the 2021 Rule -- apparently unharmed by the very same economic reality analysis now embodied in the 2024 Rule.

---

[4] *See* Independent Contractor Status Under the Fair Labor Standards Act, 86 FR 1168-01 (Jan. 7, 2021) ("2021 Rule").

Even if the Court has jurisdiction, it should reject plaintiffs' request to sweep away interpretive guidance that: (1) is consistent with Supreme Court and circuit court precedent instructing that the determination of employee or independent contractor status under the FLSA must be based on a multifactor "economic reality" test where the totality of the circumstances are considered and no one factor is determinative, *see Scantland*, 721 F.3d at 1311-12; and (2) is consistent with the analysis that has, since the 1940s until the 2021 Rule, generally guided DOL in the exercise of its enforcement authority under the FLSA, as well as employers and employees more broadly.   Plaintiffs' differences of opinion about DOL interpretations fall far short of what is required to show that an agency's action is so unreasoned as to be unlawful.  The 2024 Rule is well within DOL's authority under the FLSA to interpret the Act.  The Rule's analysis of the distinction between employees and independent contractors faithfully applies the FLSA's broad definitions and is consistent with decades of precedent in the Supreme Court and circuit courts, including this Circuit.

Nor is the 2024 Rule arbitrary and capricious.  As DOL reasonably concluded, the 2024 Rule is consistent with the FLSA's text as interpreted by courts and less likely to cause confusion than the 2021 Rule due to its consistency with abundant judicial precedent.  The 2024 Rule should help prevent the misclassification of workers, which itself results in the denial of FLSA protections for employees and

places businesses that comply with the law at a competitive disadvantage.  The Court should therefore uphold the 2024 Rule.  For these reasons, as set forth more fully below, the Court should grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

The facts of this case are set forth in Defendants' Statement of Undisputed Material Facts, which is filed contemporaneously herewith and incorporated herein.

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(1) requires dismissal if a court lacks subject-matter jurisdiction.  A Rule 12(b)(1) motion to dismiss must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994); *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022).  Plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

 "The court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Scantland*, 721 F.3d at 1310.  In an APA case, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v.*

*Pitts*, 411 U.S. 138, 142 (1973); *Rolling Meadow v. U.S. Dep't of Agric.*, No. 21-14058-CIV, 2023 WL 5300431, at *2 (S.D. Fla. July 16, 2023).  "The entire case on review is a question of law, and only a question of law."  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  Summary judgment merely "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and [is] otherwise consistent with the APA standard of review."  *Rolling Meadow*, 2023 WL 5300431, at *2.

I.   **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING**

   A.   **Plaintiffs Show No Certainly Impending Injury, Causality, or Redressability Warranting Injunctive Relief**

Plaintiffs lack standing to pursue their claims for declaratory and injunctive relief.  "Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies,'" and thereby requires plaintiffs to "establish that they have standing to sue."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotation omitted).  Plaintiffs bear the burden of showing (1) "concrete and particularized" injury in fact, that is "actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury will be 'redressed by a favorable decision.  *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560-61).

To establish standing to pursue prospective injunctive relief, plaintiffs must demonstrate that they are "immediately in danger of sustaining some direct injury" that is "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). When standing turns on claimed future injury, there must be "certainly impending" threatened injury or "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *TransUnion*, 594 U.S. at 435 (risk of future harm must be "sufficiently imminent and substantial."); *Dream Defs. v. Gov. of Fla.*, 57 F.4th 879, 887 (11th Cir. 2023). "[A]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409; *Daker v. Carr*, No. 20-13067, 2022 WL 1398119, at *2 (11th Cir. May 3, 2022).

The 2024 Rule interprets the FLSA, which imposes minimum wage and overtime pay (among other) requirements on employers, 29 U.S.C. §§ 206(a), 207(a), not workers. Plaintiffs allege harm that is largely based on purported "risks of liability" to their "clients," *i.e.*, the business that engage them to work. Compl. ¶ 45; Warren Dec. ¶ 7 (ECF No. 15-3); Kaplan Dec. ¶ 10 (ECF No. 15-4); Kavin Dec. 3 (ECF No. 15-5); Singer Dec. ¶ 7 (ECF No. 15-6). In other words, plaintiffs are alleging injury as a result of how the 2024 Rule might affect someone else who is not a party to this lawsuit. Where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation … of *someone else*, much more is needed" to demonstrate Article III standing. *Lujan*, 504 U.S. at 562.

Here, plaintiffs fail to adduce facts showing that their clients will make choices "in such manner as to produce causation and permit redressability of injury." *Id.* Two plaintiffs allege only that they "have good reason to believe" they "will" lose clients. Warren Dec. ¶ 7; Singer Dec. ¶ 7. The remaining two claim they have lost opportunities for projects because of their clients' fears about liability under the 2024 Rule, Kavin Dec. ¶ 14, Kaplan Dec. ¶ 10, but those claims are speculative and lack specificity. Moreover, glaringly absent from these assertions are any facts showing that plaintiffs' clients changed their practices in ways favorable to plaintiffs after the 2021 Rule was promulgated, and that they have now reversed those changes, further underscoring the tenuous connection between the 2024 Rule and plaintiffs' assertions of harm.

In addition to failing to establish standing based on actions by their clients that resulted from the 2024 Rule, plaintiffs fail to demonstrate that the Rule will harm *them* in any way. Plaintiffs' "fear that they will lose business due to uncertainty or fear of liability risks." Compl. ¶ 44. But "fear" based upon "fear"—in other words, a "speculative chain of possibilities"—is hardly the sort of "certainly impending" injury necessary to establish standing. *Clapper*, 568 U.S. at 414. While plaintiffs also allege that the 2024 Rule "threatens" their independent contractor status, Warren Dec. ¶ 7; Kaplan Dec. ¶ 6, or that they are "anticipating" that they "will need to continue to consider" altering their business practices, Kaplan Dec. ¶ 12; *see* Kavin

Dec. ¶ 16; Singer Dec. ¶ 10, they fail to allege any actual or "certainly impending" injury to themselves, or to present any specific facts to show it.  Tellingly, not one of the four plaintiffs has indicated that she will be, or has actually been, reclassified as an employee as a result of the 2024 Rule.  Plaintiffs' speculation about future injury is "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper*, 568 U.S. at 418 (quotation omitted); *cf. Frisard's Transp., L.L.C. et al. v. DOL*, No. 2:24-cv-00347-EEF-MBN, Minute Entry (E.D. La. Mar. 8, 2024) (denying emergency relief regarding the 2024 Rule and finding "no immediate threat of harm or immediate harm").

Plaintiffs' fears are especially unfounded in light of the terms of the 2024 Rule itself, which "is not intended to disrupt the businesses of independent contractors who are, as a matter of economic reality, in business for themselves."  89 FR at 1638. Instead, it "provides a consistent approach for those businesses that engage (or wish to engage) independent contractors as well as for those who wish to work as independent contractors."  *Id.* at 1640.  Thus, DOL "does not anticipate that independent contractors … who are correctly classified as independent contractors under current circuit law would be reclassified."  *Id.* at 1659; *see also id.* at 1658-59 (supportive comments).  DOL's recent subregulatory guidance, drawing on the 2024 Rule, also explains that writers in positions similar to plaintiffs' may often qualify

as independent contractors.[5]

Indeed, because plaintiffs have been in business since well before the promulgation of the 2021 Rule, *see* Compl. ¶ 39, there is no credible basis for asserting harm given that the 2024 Rule simply adopts "guidance derived from the same analysis that courts [such as the Eleventh Circuit in *Scantland*] have applied for decades," 89 FR at 1658, and under which plaintiffs have apparently operated without injury.  In other words, if plaintiffs were properly classified as independent contractors before the 2021 Rule (and there is no suggestion that they were not), then the 2024 Rule should not change those circumstances.  And the one plaintiff who does "occasionally" hire workers but believes the 2024 Rule "injects tremendous uncertainty" into her classifications of subcontractors such that she has "suspended the commissioning of other [freelancers]," Singer Dec. ¶¶ 8-10, does not allege any facts showing that she had changed her "commissioning" in reliance on the 2021 Rule or that she was unable to hire workers as independent contractors under applicable judicial precedent prior to the 2021 Rule (which precedent the 2024 Rule embodies).  In any event, plaintiff Singer's purported suspension of the "commissioning" of other freelancers is not based on any rational reading of the 2024 Rule, is contrary to DOL's freelancer guidance referenced above, and is not

---

[5] *See 2024 FLSA Worker Classification Rule—Information for Potential Freelancers*, Wage & Hour Div., U.S. Dep't of Labor, https://perma.cc/9T66-JQYA.

the type of injury that counts for standing because it is self-inflicted and not actually based on the agency's action.[6]

Plaintiffs' remaining alleged injury consists of the "expect[ation]" that they will "spend considerable time and effort reviewing the new rule."  Compl. ¶ 45.  But merely deciding to read a rule does not confer Article III standing to challenge it.  In any event, the regulatory text of the 2024 Rule is only three pages and is mostly already familiar to the regulated community because its analysis is aligned with longstanding judicial precedent.  See 89 FR 1733.

For similar reasons, plaintiffs also fail to meet their burden of showing any

---

[6] Singer apparently believes that if she hires anyone to provide services that are "critical to [her] business," then "the new Rule will inevitably weigh against [her] independent contractor classifications."  Singer Dec. ¶ 9.  Singer is presumably referring to the integral factor, which considers whether a worker performs work that is "critical, necessary, or central to the potential employer's principal business."  29 C.F.R. § 795.110(b)(5).  However, Singer's beliefs run contrary to repeated explanations by DOL, both in the 2024 Rule and in guidance issued for freelancers, that "not all workers who perform integral work are employees" and that "the integral factor is just one area of inquiry that is considered along with the other factors to reach the ultimate determination of economic dependence or independence."  89 FR 1710.  Her misperception of how the 2024 Rule will affect her business does not give her standing.  *See Clapper*, 568 U.S. at 416-18 (plaintiff's subjective fear does not give rise to standing); *accord Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1339 (11th Cir. 2021) ("[A] plaintiff cannot conjure standing by inflicting some direct harm on itself to mitigate a perceived risk.").  Moreover, because the status of Singer's relationships with other "freelancers" has always been subject to the Eleventh Circuit's economic reality test, choosing now to end those relationships when the 2024 Rule adopts a very similar test is an "unreasonable decision" that does not result in a harm that gives rise to standing.  *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000).

"line of causation" that is more than "attenuated" between the 2024 Rule and the possibility that they or plaintiff Singer's possible workers are misclassified as independent contractors and will be reclassified as employees. *Allen v. Wright*, 468 U.S. 737, 757 (1984).  Nor have plaintiffs shown it to be "likely" that the requested relief would redress their alleged harm. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).  Any risk existing now that plaintiffs (or plaintiff Singer's possible workers) are misclassified has likely not changed since the 2024 Rule took effect.  Because plaintiffs cannot show that their activities are or will be affected in any significant way by the 2024 Rule (beyond actions taken based on a speculative fear of liability), or that injunctive relief would serve any purpose, they lack standing to assert claims for injunctive relief.[7]

## C.   There Is No Immediate Controversy That Warrants Declaratory Relief

Plaintiffs' claim for declaratory relief is flawed for the same reasons as their claim for injunctive relief and must suffer the same fate.  The facts do not show that

---

[7] Even if the Court were to conclude that plaintiffs have met their standing burden to pursue injunctive relief against DOL, plaintiffs still could not prevail in their effort to enjoin DOL here, because the "equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *Lyons*, 461 U.S. at 111; *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Plaintiffs' speculative and unsubstantiated assertions do not "demonstrate that irreparable injury is *likely* in the absence of an injunction," *Winter*, 555 U.S. at 22.

there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Where there is "no ongoing injury to [plaintiffs] and any threat of future injury is neither imminent nor likely, there is not a live case or controversy for this court to resolve and a declaratory judgment would therefore be inappropriate." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).  Indeed, it is unclear what purpose a declaratory judgment against DOL would serve, or what "controversy" such a declaratory judgment would address, when the Complaint indicates that nothing in plaintiffs' business practices has actually changed as a result of the 2024 Rule.  Hence, plaintiffs' request for a declaratory judgment should be denied.

## II.    ALTERNATIVELY, JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS

To the extent the Court concludes that it has jurisdiction, the Court should enter judgment for DOL because the 2024 Rule does not violate the APA.  The 2024 Rule falls well within the "zone of reasonableness," *see FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), and is valid.

### A.    The 2024 Rule Falls Within DOL's Statutory Authority

Plaintiffs claim that the 2024 Rule is in excess of statutory authority because it is inconsistent with the FLSA.  Compl. ¶ 58.  But the 2024 Rule's economic reality analysis aligns with the FLSA's text, as interpreted by the courts.

### 1.     The 2024 Rule is consistent with binding judicial precedent

The 2024 Rule applies the economic reality test by examining the totality of the circumstances and treating no single factor as dispositive.  89 FR 1668.  The Supreme Court first declared and has repeatedly emphasized that employment status under the FLSA turns upon the "circumstances of the whole activity," rather than "isolated factors."  89 FR 1651 n.125 (quoting *Rutherford*, 331 U.S. at 730; citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")).  Similarly, federal appellate courts have consistently cautioned against a mechanical or formulaic application of the economic reality test, 89 FR 1651 & n.126 (citing cases), and specifically warn that it "'is impossible to assign to each of these factors a specific and invariably applied weight.'"  89 FR 1651 & n.127 (citing *Scantland*, 721 F.3d at 1312 n.2 ("The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case.")).

Plaintiffs claim that the 2024 Rule "rewrites" 70 years of FLSA precedent that was embodied in the 2021 Rule, ECF 15-1 ("Pl. Mem.") at 28,[8] but plaintiffs have it backwards.  By elevating two "core factors" as "most probative," the 2021 Rule

---

[8] Citations are to the ECF pagination of plaintiffs' brief.

ran counter to Supreme Court and federal court of appeals precedent holding that no single factor in the economic reality analysis is dispositive. 89 FR 1651 & n.128. As the Eleventh Circuit stated in applying the six factors "deemed relevant by the Supreme Court," "no single factor is dominant," and "the weight of each depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case." *Scantland,* 721 F.3d at 1312 (quoting *Pilgrim Equip.*, 527 F.2d at 1311-12) & n.2 (quoting *Santelices v. Cable Wiring,* 147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001)). Accordingly, the 2021 Rule, *not* the 2024 Rule, "rewrites" established precedent.

Indeed, in contrast to the 2021 Rule, *no* court of appeals considers any one factor or combination of factors to invariably predominate over the others.[9]  If it

---

[9] 89 FR 1642 & nn.52, 53 (citing *Parrish,* 917 F.3d at 380 (stating that "the test cannot be rigidly applied" and "[i]t is impossible to assign to each of these factors a specific and invariably applied weight"); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) ("None of these factors is determinative on its own, and each must be considered with an eye toward the ultimate question – [the worker's] economic dependence on or independence from the alleged employer."); *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018) ("The overarching inquiry is based on the totality of the circumstances, and no single factor is dispositive."); *Morrison v. Int'l Prgms. Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) ("No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence."); *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("It is a well-established principle that the determination of the employment relationship does not depend on isolated factors . . . [N]either the presence nor the absence of any particular factor is dispositive."); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("No one of these factors is dispositive; rather, the test is based on a totality of the

were to hold that the 2024 Rule violates the APA, the Court would effectively be rejecting the Eleventh Circuit's longstanding application of the economic reality analysis.  It should decline to do so.

Plaintiffs' assertion that *Silk* announced five factors and emphasized control and opportunity for profit as the "most probative" factors," Pl. Mem. at 20, is flatly wrong.  The Court in *Silk* stated that "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision.  *No one factor is controlling* nor is the list complete."  331 U.S. at 716 (emphasis added).  Moreover, the critical fact that neither the Supreme Court nor any other court has *ever* held that those two factors, or any other factor or factors, should always be accorded more weight in the analysis holds true even though it might be possible to list particular cases under whose specific facts those two factors might coincidentally point to the same classification that was ultimately determined to be correct.  *See* Pl. Mem. at 21; *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 313 (5th Cir. 2021) (noting that the economic reality test is a "fact-intensive inquiry").

---

circumstances. . . . Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided."); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) ("Certain criteria have been developed to assist in determining the true nature of the relationship, but no criterion is by itself, or by its absence, dispositive or controlling."); *Pilgrim Equip.*, 527 F.2d at 1311 ("No one of these considerations can become the final determinant . . . .")); *see also* 89 FR 1669 n.239.

The speciousness of plaintiffs' reasoning, *see* Pl. Mem. at 21, is apparent from the simple fact that, if any two factors point toward the same outcome, the probability increases that the outcome indicated by those two factors will align with the ultimate outcome.  89 FR 1652.  Yet, the 2021 Rule did not address whether a different combination of two factors would yield similar results.  89 FR 1652.  And in fact, in most of the cases cited in the 2020 Notice of Proposed Rulemaking ("2020 NPRM") and the 2021 Rule in support of its core factor analysis, multiple factors pointed in the same direction.  89 FR 1652 & n.135.  This further underscores the 2021 Rule's unduly narrow focus on two specific "core factors."  89 FR 1652.

Moreover, as DOL indicates, the cases cited in support of the 2021 Rule's creation of "core factors" do not, themselves, elevate these two factors, but rather state the opposite, *i.e.*, that no factor in the economic reality test is dispositive or should be assigned an invariably predetermined weight.  89 FR 1651 & nn.133.  Hence, the discussion in the 2020 NPRM and 2021 Rule of the case law in support of the core factors was inconsistent with the decisions themselves.  89 FR 1651.

Additionally, the 2021 Rule did not identify *any* cases stating that the two "core factors" are "more probative" of a worker's classification than other factors.  89 FR 1651; *see* Pl. Mem. at 21.  However, the 2021 Rule did acknowledge cases in which the control factor did not indicate the classification that the courts ultimately determined was the correct classification, 89 FR 1651 & n.134, and cases in which

the profit or loss factor did not indicate the classification that the courts ultimately determined was the correct classification  or was not even addressed by the court, 89 FR 1651-52 (citing cases, including *Nieman v. Nat'l Claims Adjusters, Inc.*, 775 F. App'x 622, 625 (11th Cir. 2019) (concluding that worker was an independent contractor without considering profit or loss or integral factors because facts were not presented on those issues)).  Thus, the 2021 Rule's mechanical deconstruction of case law ignored the broader approach that courts have taken in determining worker classification.  89 FR 1651-52.

### 2.    The 2024 Rule is consistent with the FLSA

The 2024 Rule's economic reality analysis is fully consistent with the FLSA's statutory definitions.  Compl. ¶ 58.  In particular, the Act's definition of "employ" to "include[] to suffer or permit to work," 29 U.S.C. § 203(g), demonstrates Congress's intent for the FLSA to broadly cover workers as employees.[10]  On the other hand, there is no basis in the FLSA as interpreted by courts for the 2021 Rule's predetermined weighting of factors.  Indeed, prioritizing two "core factors" *i.e.*, the

---

[10]  89 FR 1667 & n.216 (citing *Darden*, 503 U.S. at 326 (noting that "employ" is defined with "striking breadth"); *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945) ("A broader and more comprehensive coverage of employees . . . would be difficult to frame)); *see also* 89 FR 1667 & n.218  (citing *Antenor v. D & S Farms*, 88 F.3d 925, 929 n.5 (11th Cir. 1996) (stating that the phrasing "suffer or permit" was commonly used in state laws "to reach businesses that used middlemen to illegally hire and supervise children."); *Pilgrim Equip.*, 527 F.2d at 1311 ("an expansive definition of 'employee' has been adopted by the courts.")).

control and opportunity for profit or loss factors, over others was in tension with the FLSA's broad definition of the employment relationship because it narrowed the scope of the analysis for determining who is an employee. 89 FR 1650. Altering the focus of this analysis to two "core factors" – particularly the control factor – was also problematic in light of judicial precedent interpreting the FLSA to encompass a broader employment relationship than the common law control test, and it risked causing confusion which could lead to misclassification. 89 FR 1652, 1667.

Plaintiffs contend that the 2021 Rule gives the FLSA a "fair reading" consistent with *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79 (2018), and that the 2024 Rule conflicts with *Encino* because it mentions the FLSA's statutory purpose. Pl. Mem. at 22-24. However, as DOL explained, the 2024 Rule does not rely on the "remedial purpose" of the Act or any principle of statutory construction, but instead relies on the clear textual indication in the Act's definitions through the inclusion of the "suffer or permit" language in 29 U.S.C. § 203(g) that broad coverage was intended. 89 FR 1668 & n.221. As such, the guidance in the 2024 Rule regarding application of six factors to aid in determining economic reality where no one factor has a predetermined weight represents a "fair reading" of the Act. *See id.; see also, e.g., Nieman v. Nat'l Claims Adjusters, Inc.*, 775 F. App'x 622, 624 (11th Cir. 2019) (post-*Encino* decision applying same six factors to guide economic reality inquiry).

Moreover, *Encino* did not address the distinction between employees and

19

independent contractors or any of DOL's guidance on the subject. *See* 89 FR 1668 & n.221. Rather, *Encino* addressed whether a car dealership employee should be included among the categories explicitly exempted from the FLSA and therefore excluded from its overtime pay requirement. The Court found that the FLSA's exemptions should be given a "fair reading," because there was no "textual indication" in the statute "that its exemptions should be construed narrowly." *Encino*, 584 U.S. at 88-89; 89 FR 1668 & n.221. Nothing in *Encino*'s limited statement regarding the construction of FLSA exemptions suggests that DOL has construed the text of the FLSA's employment definitions too broadly based on such a rule of statutory construction. Moreover, given the explicit definition of "suffer or permit" which has been interpreted by courts to reject the common law test, *see, e.g., Yoder v. Fla. Farm Bureau*, No. 22-11135, 2023 WL 3151107, at *2 (11th Cir. Apr. 28, 2023) ("our circuit holds that '[t]he common law concepts of "employee" and "independent contractor" [are] specifically rejected as determinants of who is protected' by the FLSA") (quoting *Pilgrim Equip.*, 527 F.2d at 1311), plaintiffs' contention that a "common law employment relationship" should be deemed "more relevant" than other factors in evaluating economic reality, Pl. Mem. at 23, is clearly not a "fair reading" of the Act. *See* 89 FR 1661.

      **3.**     **The 2024 Rule provides robust, helpful guidance about the economic reality analysis**

Plaintiffs claim that the 2024 Rule is "vague and amorphous," and provides "no useful guidance."  Compl. ¶ 57; Pl. Mem. at 18, 30.  But the Rule supplies a comprehensive interpretation, based on case law and DOL's enforcement expertise, for assessing whether a worker is an employee or independent contractor under the FLSA.  89 FR 1669.  It does so in easily accessible interpretive regulatory text that can be applied to workers in any industry and is clearer and more robust than DOL's earlier subregulatory guidance.  *Id.* at 1659-60.  To be sure, DOL did not provide mechanistic instructions for analyzing the economic reality factors, because to do so would be directly contrary to case law and would limit the test's intended flexibility.  *Id.* at 669-70.  Rather, the factors are tools that help determine whether a worker is economically dependent on her employer for work or is in business for herself.[11]

Plaintiffs cannot show that the 2024 Rule provides less "predictability" than the 2021 Rule, *see* Pl. Mem. at 16—let alone that the agency's contrary conclusion that the 2024 Rule provides more predictability because of its consistency with judicial precedent was *unreasonable*, as they must to prevail on this claim.  *See Prometheus*, 141 S. Ct. at 1158 ("deferential" standard ensures that agency acted within a "zone of reasonableness").  Rather, plaintiffs' supposition is belied by the

---

[11] 89 FR 1670 & n.244 (citing *Scantland*, 721 F.3d at 1312 (The economic reality factors "serve as guides, [and] the overarching focus of the inquiry is economic dependence."); *Pilgrim Equip.*, 527 F.2d at 301-02 (The economic reality factors "are aids – tools to be used to gauge the degree of dependence of alleged employees . . . .").

fact that the 2024 Rule sets forth, in interpretive regulations, the familiar multifactor economic reality test that the courts have applied for decades, while the 2021 Rule provided a novel alternative to that settled approach. 89 FR 1649-53. Indeed, the Eleventh Circuit itself applies a "[non]exhaustive" multifactor test that is essentially identical to the analysis in the 2024 Rule. *Cf. Scantland*, 721 F.3d at 1312, *with* 29 C.F.R. § 795.110(b). That alone should resolve this case in DOL's favor.

Similarly, plaintiffs' insistence that the economic reality test is "confusing and difficult" and produces "litigation and uncertainty," Pl. Mem. at 6, 12, misses the mark. While the test may not always provide "definitive guidance to those affected, it allows for flexible application to the myriad different working relationships that exist in the national economy."[12] DOL reasonably determined that the nuanced analysis that accompanies each factor in the 2024 Rule is more appropriate guidance than rote instructions for weighing the factors. *Id.* at 1670.

The notion that the 2021 Rule would "simplify and focus" the economic reality test, Compl. ¶ 43; *see* Pl. Mem. at 13, 20, misses the point and lacks support. As an initial matter, preferring one's own judgment to the agency's judgment is not

---

[12] *McFeeley v. Jackson Street Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016), *cited in* 89 FR 1642 n.52; *see also* 89 FR 1642 & n.51 (citing *Pilgrim*, 527 F.2d at 1311 ("[T]he lesson taught by the Supreme Court's 1947 trilogy is that any formalistic or simplistic approach to who receives the protection of this type of legislation must be rejected.")); *Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1043 (5th Cir. 1987) ("There are no neat diagnostic formulas, only rough guidelines and checklists to determine employee status."), *cited in* 89 FR 1642 n.52.

a winning claim under the APA. *See Prometheus*, 141 S. Ct. at 1158. In any event, to apply the 2021 Rule, courts would have needed to discern what its new interpretation meant (including how it weighed and narrowed certain factors) and then to decide whether to apply it or their own standards from precedent (or some combination). 89 FR 1654. These questions could have taken years of litigation in different circuits to sort out, and businesses operating nationwide would have faced the prospect of familiarizing themselves with multiple standards and interpretations of who is an employee under the FLSA, resulting in more confusion and uncertainty. *Id.* In contrast, the 2024 Rule adopts an established analysis that the agency and courts have applied for decades.

Moreover, the 2021 Rule introduced ambiguous new terms and concepts. 89 FR 1654. For example, it failed to define what it would mean in practice for two factors to be "core factors" entitled to greater weight, and offered no guidance for how "substantial" the likelihood would be that, if the two core factors point to the same classification, that classification would be correct even if the additional factors point toward the other classification. *Id.* Nor did the 2021 Rule specify the relative weight given to the "additional factors" as compared with the three non-"core" factors. 89 FR 1654. The 2021 Rule would also have collapsed some factors into each other -- contrary to decades of practice and precedent -- so that, for example, investment and initiative would have been considered only as part of the opportunity

for profit or loss factor, thereby changing the way those factors have long been applied. *Id.* Once courts were faced with deciding whether to apply and interpreting these new concepts and the new weighing and treatment of the factors, *id.*, substantial confusion and uncertainty might well have resulted.

Indeed, in arguing against the proposed rescission and replacement of the 2021 Rule, commentators illustrated the confusion that the 2021 Rule's novel analysis created. *Id.* at 1656. For example, several inaccurately described the 2021 Rule as establishing a "two factor test," *id.*, while others mistakenly assumed that non-core factors should be considered only when the two core factors pointed to opposite classification outcomes, *id.* & n.161. Some commenters erroneously assumed there was a reduced need to consider the non-core factors under the 2021 Rule, 89 FR 1656 & n.162, and even equated the 2021 Rule's economic reality test with a common law control test, *id.* at 1656 & n.163. This confusion reinforced the reasonableness of DOL's forecast that the 2021 Rule could have resulted in misapplication of the economic reality test and should be rescinded. *Id.* at 1656.

### 4. The 2024 Rule reasonably articulates the "integral" factor

There is also no merit to plaintiffs' allegation that the 2024 Rule's interpretation of the "integral part" factor is inconsistent with Supreme Court and circuit precedent. Pl. Mem. at 29. In *Silk*, the Supreme Court considered whether the workers were an "integral part" of the businesses. 331 U.S. at 716. *Rutherford*,

24

issued contemporaneously, described the workers as "part of the integrated unit of production," the formulation used in the 2021 Rule.  331 U.S. at 729.  However, none of the circuits listing integral as an enumerated factor uses the term "integrated unit."  89 FR 1707.  DOL reasonably determined that a rigid approach to the specific phrasing in *Rutherford* did not reflect Supreme Court or circuit court precedent.  *Id.*

In addition, the 2024 Rule's integral factor considers whether the work is "critical, necessary, or central to the employer's principal business," *see* Pl. Mem. at 29, which is more consistent with the totality of the circumstances approach to assessing whether a worker is an employee or an independent contractor than the 2021 Rule's "integrated unit of production" framing.  89 FR 1707.  What matters most under the 2021 Rule is "the extent of [a worker's] integration [into a business's production process] rather than the importance or centrality of the functions performed" by the worker.  87 FR 62253, *cited in* 89 FR 1707 n.456.  But because courts understand the integral factor as being focused on the importance or centrality of the functions performed,[13] DOL reasonably did not use the "integrated unit" terminology and articulated the integral factor as it has been consistently understood by the courts.  89 FR 1707 n.462.

###### 5.    The 2024 Rule reasonably analyzes the "control" factor

---

[13] *See*, *e.g.*, *Scantland*, 721 F.3d at 1319 (integral factor favored employee status where workers played an "integral role" in and were the "backbone" of the employer's business).

25

Plaintiffs contend that in stating that control relates to "the performance of the work and the economic aspects of the working relationship," DOL uses an unprecedented phrase.  Pl. Mem. at 29.  In fact, however, the concept of the "economic aspects of the working relationship" is a common formulation in case law because whether the employer controls meaningful economic, as opposed to day-to-day, aspects of the work relationship is probative of whether a worker stands apart as having her own business.[14]  Thus, DOL's analysis of the control factor uses a phrase that is not only present in case law, but also represents a concept directly relevant to the "overarching focus" of the economic reality test, which is "economic dependence." *See Scantland*, 721 F.3d at 1312.

## B.    The 2024 Rule Is Not Arbitrary and Capricious

To pass muster under arbitrary-and-capricious review, the agency need only "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor v. Pennsylvania,* 140 S. Ct. 2367, 2383 (2020). Under this "deferential" standard, a court "simply ensures that the agency has acted within a zone of reasonableness,"

---

[14] 89 FR 1693 & n.364 (citing *Scantland*, 721 F. 3d at 1314 (finding workers to be employees, in part, because they "were subject to meaningful supervision and monitoring by" their employer); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343-44 (5th Cir. 2008) (finding that control weighs in favor of employee status even where the employer disclaims control over "day-to-day affairs" of workers because the employer "controlled the 'meaningful' economic aspects of the business")).

and "may not substitute its own policy judgment for that of the agency."[15]   Moreover, when an agency changes a policy, it need not demonstrate "that the reasons for the new policy are better than the reasons for the old one," but only that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better."[16]   "If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013). Plaintiffs bear the burden of proof.  *See Druid Hills Civic Ass'n v. Fed. Highway Admin.,* 772 F.2d 700, 709 n.9 (11th Cir. 1985).

Plaintiffs' claim that the 2024 Rule and rescission of the 2021 Rule is arbitrary and capricious because it is based on a mistaken view of the law and inadequate justification, Compl. ¶¶ 51-53; Pl. Mem. at 27, fails on every count.  DOL provided an exhaustive account of its reasons for rescinding the 2021 Rule and replacing it with the 2024 Rule's interpretive regulations.  As the agency explained and as described above, the 2024 Rule is consistent "with the FLSA and the decades of case law interpreting it," 89 FR at 1660, and thereby less likely than the 2021 Rule to

---

[15]  *Prometheus*, 141 S. Ct. at 1158; *see Mendoza v. DHS*, 851 F.3d 1348, 1352 (11th Cir. 2017); *see also Miccosukee Tribe v. U.S.*, 566 F.3d 1257, 1264 (11th Cir. 2009).

[16]  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see Ohio v. Becerra*, 87 F.4th 759, 772 (6th Cir. 2023) (courts "do not apply greater scrutiny to agency action that changes a prior policy").

cause "confusion and uncertainty," *id.* at 1653, which could lead to "the misclassification of employees as independent contractors," and "the denial of FLSA protections," *id.* at 1656.  DOL also determined that, if the 2024 Rule's interpretive regulations were set aside, it would still intend to rescind the 2021 Rule for the same reasons. *Id.* at 1724-25.  In that event, "case law and DOL's subregulatory guidance … would provide a familiar and longstanding standard for businesses and workers." *Id.* at 1725.  The agency therefore provided a "satisfactory explanation" for its reasonable decisions, which should be upheld.  *Little Sisters*, 140 S. Ct. at 2383.

### C.    The 2024 Rule Is Not Unconstitutionally Vague

Plaintiffs claim that the 2024 Rule fails to give stakeholders sufficient guidance about who is covered under the FLSA.  Compl. ¶¶ 62-63.  In order not to be found impermissibly vague, a law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Vagueness challenges to statutes which, like the instant case, do not involve First Amendment freedoms, must be examined in the light of the facts of the case at hand.  *United States v. Mazurie*, 419 U.S. 544, 550 (1975); *U.S. v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010).

There is no credible basis for plaintiffs' vagueness argument.  The 2024 Rule merely adopts guidance derived from the analysis that courts, including the Eleventh Circuit, have applied for decades and are continuing to apply.  89 FR 1658-59, 1668.

Those courts acknowledge that there can be no "simple resolution," *see Pilgrim Equip.*, 527 F.2d at 1311, or "mechanical application," *see Superior Care*, 840 F.2d at 1059, of the economic reality test because economic dependence "depends on the facts of the case," *Scantland*, 721 F.2d at 1312 n.2.

Moreover, as explained in section II(A)(3) above, the 2024 Rule's discussion of how courts and DOL's previous guidance apply the factors brings the multifactor test into focus, reduces confusion as to the overlapping factors, and provides a more consistent basis for understanding the flexibility of the test as applied to changes in the modern economy.  89 FR 1648-49.  The 2024 Rule's approach also offers a better framework for applying the concept of economic dependence by explaining how economic dependence is analyzed within each of the six economic realities factors.  89 FR 1647; *see also* 89 FR 1664-1725; 89 FR 1741-43.

DOL has not articulated meaningfully different formulations of the economic reality test.  *See* Pl. Mem. at 13, 15.  Rather, its guidance since 1949 has "distill[ed] six 'primary factors which the Court considered significant' in *Rutherford* and *Silk*," 89 FR 1643; *see id.* at 1642-44; *see also Scantland*, 721 F.3d at 1312 n.2.  In any event, as plaintiffs themselves concede, the factors are "not exclusive" Pl. Mem. at 12, and DOL considered the worker's "degree of independent business organization and operation" at times in its subregulatory guidance.  89 FR 1643.  Consistent with its intent to align its guidance with judicial precedent and because it was "not aware

of any court that has used this as a standalone factor," DOL did not include this consideration in the 2024 Rule. *Id.* at 1717.  Of course, it is the 2024 Rule – not DOL's prior guidance – that is before the Court.

If plaintiffs have any quarrel, it is not with the guidance in the 2024 Rule, but with the courts' interpretation of the FLSA on which that guidance is based. Plaintiffs portray established Supreme Court precedent in this area as a "doctrinal void," Pl. Mem. at 9, 13, into which lower courts reluctantly stepped to "appl[y] a version of the *Silk* test" in order to create the economic reality test, Pl. Mem. at 12. But this theory is cut out of whole cloth as explained above.  And having no valid legal basis for their argument that the 2024 Rule is contrary to law or unconstitutionally vague, plaintiffs mischaracterize the 70 years of precedent on which it is based as nothing more than "scattered statements," *id.* at 21, "dicta," *id.* at 22, "random . . . quotations," *id.* at 23, and a "gloss" on the FLSA, *id.* at 21.  None of these statements is true, and any perceived vagueness in the 2024 Rule is simply the result of plaintiffs' own misunderstanding of the law and the Rule itself. [17]

## CONCLUSION

---

[17] To the extent plaintiffs seek a nationwide injunction, such relief would be inappropriate.  *See generally U.S. v. Texas*, 599 U.S. 670, 693-99 (2023) (Gorsuch, J., concurring in the judgment); *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring); *Nuziard v. Minority Business Dev. Agency*, __ F. Supp. 3d __, No. 4:23-cv-00278-P, 2024 WL 965299, at \*42 (N.D. Tex. March 5, 2024).

For the foregoing reasons, defendants' motion to dismiss or alternatively for summary judgment should be granted, and plaintiffs' motion for summary judgment should be denied.

Dated: May 28, 2024           Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Director, Federal Programs Branch


*/s/ Lisa A. Olson*
LISA A. OLSON
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12200
Washington, D.C. 20005
Telephone: (202) 514-5633
Email: Lisa.Olson@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B for documents prepared by computer.

/s/ Lisa A. Olson
LISA A. OLSON
Senior Trial Counsel