# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| KARON WARREN, DEBORAH KAPLAN, KIMBERLY KAVIN, and JENNIFER SINGER, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, as the acting U.S. Secretary of Labor; ADMINISTRATOR JESSICA LOOMAN, as the head of the U.S. Department of Labor's Wage and Hour Division; and U.S. DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | No. 2:24-CV-0007-RWS |

# PLAINTIFFS' CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT, AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 3

  I.  The Department's Withdrawal of the 2021 Rule and Imposition of
    the 2024 Rule Violates the APA ............................................ 3

  A.  The 2021 Rule Was a Lawful Interpretation and Its Withdrawal
    Was Arbitrary and Capricious .................................... 4

    i.  The 2021 Rule Is Consistent With the Statute and Case Law ........ 5

      1.  The Statutory Text Is Hopelessly Ambiguous Unless Given a
        Crystalizing Interpretation ............................ 5

      2.  The 2021 Rule Is Consistent with Decades of Case Law .............. 9

    ii.  The 2021 Rule Is Not "Mechanical" and Does Not Render Any
      Particular Factor "Dispositive" ....................... 12

  B.  The Withdrawal Failed to Consider the Department's Obligation
    to Promulgate Rules with Objective Standards to Which
    Ordinary People Can Understand and Conform ........................... 13

  II.  Plaintiffs Have Article III Standing ........................................ 19

  A.  Injury to Singer as a Hiring Entity ................................. 20

  B.  Injury to Independent Contractors ................................ 21

    i.  Contractors Are the Object of Regulation ...................... 21

    ii.  Plaintiffs Have Lost Work Under the 2024 Rule ................ 23

CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
    598 U.S. 175 (2023).................................................................. 23

*Baker v. Carr,*
    369 U.S. 186 (1962).................................................................. 21

*Bennett v. Spear,*
    520 U.S. 154 (1999).................................................................. 24

*Chiles v. Thornburgh,*
    865 F.2d 1197 (11th Cir. 1989)................................................. 19

*Crowell v. Benson,*
    285 U.S. 22 (1932).................................................................... 15

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019).................................................................. 24

*Dynamex Operations W. v. Superior Ct. of L.A.,*
    4 Cal. 5th 903 (2018).................................................................6

*Encino Motorcars, LLC v. Navarro,*
    584 U.S. 79 (2018).....................................................................9

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    144 S. Ct. 1540 (June 13, 2024) ......................................... 21–22

*Hernandez v. Plastipak Packaging, Inc.,*
    15 F.4th 1321 (11th Cir. 2021)...................................................9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).................................................................. 23

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007).................................................................. 24

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*
  *State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) (*State Farm*) ............................................ 4, 13

*Nationwide Mutual Ins. v. Darden*,
  503 U.S. 318 (1992) ......................................................................8

*Perrin v. United States*,
  444 U.S. 37 (1979) ........................................................................7

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947) ........................................................... 6–7, 11

*Sackett v. EPA*,
  598 U.S. 651 (2023) ....................................................... 5, 14–15

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308 (2013) ................................................................. 11

*Sec. & Exch. Comm'n v. Chenery Corp.*,
  318 U.S. 80 (1943) ................................................................. 4, 12

*Seila Law LLC v. Consumer Financial Protection Bureau*,
  140 S. Ct. 2183 (2020) ............................................................... 23

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ................................................................... 25

*United States v. Silk*,
  331 U.S. 704 (1947) ................................................................... 11

*W. Virginia by & through Morrisey v.*
  *U.S. Dep't of the Treasury*,
  59 F.4th 1124 (11th Cir. 2023) ................................................ 19

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................... 3, 19, 21

*Worthy v. City of Phenix City*,
  930 F.3d 1206 (11th Cir. 2019) ............................................... 23

## Statutes

29 U.S.C. § 203(d) ...........................................................................6

29 U.S.C. § 203(e) .................................................................................6

## Regulations

29 C.F.R. § 795.110(a)(2) ................................................... 18

29 C.F.R. § 795.110(b)(3) ................................................... 17

29 C.F.R. § 795.110(b)(5) ................................................... 17

Independent Contractor Status Under the FLSA,
     86 Fed. Reg. 1168 (Jan. 7, 2021) ......................................................*passim*

Independent Contractor Status Under the FLSA,
     89 Fed. Reg. 1638 (Jan. 10, 2024) .....................................................*passim*

## Other Authorities

Comment Letter of U.S. Chamber of Commerce, et al.,
     Regulations.gov (Dec. 14, 2022),
     https://www.regulations.gov/comment/WHD-2022-0003-53819 ............... 24

How to Distinguish Between Employees and Independent
     Contractors. Nat. Fed. of Ind. Bus. (July 20, 2016),
     https://www.nfib.com/content/legal-compliance/labor/how-to-
     distinguish-between-employees-and-independent-contractors-
     74759/ .......................................................................................... 16, 21

Restatement (First) of Agency § 2 (1933) ..........................................................7

Vox Media Cuts Hundreds of Freelance Journalists as AB 5
     Change Looms, LA Times (Dec. 17, 2019),
     https://www.latimes.com/business/story/ 2019-12-17/vox-
     media-cuts-hundreds-freelancers-ab5 ....................................................... 24

**INTRODUCTION**

The economic realities test has long been a source of confusion for anyone who wishes to maintain their independence as a contractor and for companies that want to contract their services. This is because the economic realities test has been articulated in various ways by the federal courts—all listing numerous factors that may be relevant in any given case. But rather than providing clarifying regulations to help avoid crossing the line into an unwanted employer-employee relationship, the U.S. Department of Labor had only historically issued sub-regulatory guidance that failed to provide consistency in how the Department would enforce the Fair Labor Standards Act (FLSA) in practice.

Recognizing that this uncertainty plagued contractors and their clients, in 2021 the Department promulgated a regulation to provide some measure of predictability to help all parties better structure their working relations. Independent Contractor Status Under the FLSA, 86 Fed. Reg. 1168 (Jan. 7, 2021) (2021 Rule). The 2021 Rule gave assurance to Plaintiff Jennifer Singer, a freelance writer, that she was likely safe in working with contractors who maintained control over their own work and who had opportunity for profit or loss—even as the 2021 Rule required consideration of other relevant factors. And likewise, it helped the other freelance writer Plaintiffs ensure that they could reasonably order their affairs to avoid unwanted employee classifications

should the Department ever audit their clients—an eventuality that would threaten their vitality as independent businesses.

But the Department has now reversed course. In January 2024, the Department finalized another Rule (2024 Rule) to withdraw the 2021 Rule. *Independent Contractor Status Under the FLSA*, 89 Fed. Reg. 1638 (Jan. 10, 2024). The Department's 2024 Rule not only took away needed clarity in the law, but it imposed a new wholly indeterminate test, under which the Department will apply at least seven factors on an entirely ad hoc basis. Faced with greater uncertainty than ever, Plaintiff Singer was compelled to stop working with other freelance writers entirely. Singer Dec. ¶ 10. And other hiring entities have responded in kind, such that the Plaintiffs, all proudly independent contractors, have lost work from reasonably risk-adverse clients. Kavin Dec. ¶ 14–15; Kaplan Dec. ¶ 10; Warren Dec. ¶ 11.

Yet faced with this lawsuit from independent freelance writers, Defendants seek to avoid a merits decision by arguing that independent contractors cannot contest the validity of the Department's independent contractor regulations. They press this standing argument even though the 2024 Rule has: (a) prompted one of the Plaintiffs to stop working with subcontractors to avoid unwanted liability; (b) created tremendous uncertainty as to whether and to what extent Plaintiffs can remain contractors themselves, and; (c) forced Plaintiffs to make changes to their businesses.

Defendants' standing arguments are not distinct from their view of the merits—and, specifically, their claim that the 2024 Rule merely turned back the clock to the Department's historic approach to the economic realities test.[1] *See* Defs.' Brief in Support of Motion to Dismiss and in Opposition to Pltfs.' Motion, (Opp. Br.) at 10 (arguing that "there is no credible basis for asserting" that the 2024 Rule caused injury because it supposedly conforms to "the same analysis" that courts had previously applied). While Plaintiffs agree that the Court can and should reach the merits here, "standing in no way depends on the merits." *See Warth v. Seldin*, 422 U.S. 490, 500 (1975). However, on the merits, Defendants are also wrong. The 2024 Rule was predicated on mistakes of law. And the 2024 Rule raises a serious void for vagueness problem because it takes away the only measure of predictability that independent contractors, like Plaintiffs, had relied on to structure their business relationships. It is, therefore, arbitrary and capricious and thus must be set aside.

## ARGUMENT

### I.   The Department's Withdrawal of the 2021 Rule and Imposition of the 2024 Rule Violates the APA

After decades of uncertainty in the scope of the FLSA's text, the Department synthesized over forty-five years of economic reality test case law and issued an interpretation, the 2021 Rule, which provided long hoped for

---

[1] For this reason, the Plaintiffs address the Defendants' merits arguments first, if only to give proper context to the "case or controversy" at hand.

stability. *See generally* 2021 Rule, 86 Fed. Reg. 1168. Now, however, the Department has withdrawn the 2021 Rule and replaced it with the 2024 Rule. This decision was plainly based on an errant view of the law and the Department's mistaken understanding of the 2021 Rule. As a result, the 2024 Rule is arbitrary and capricious. Further, the 2024 Rule creates a void for vagueness problem, which the Department failed to consider because it erroneously concluded that it lacked authority to retain the 2021 Rule's crystalizing construction. For this reason, as well, the 2024 Rule failed to consider "an important aspect of the problem," of providing guidance to a regulated community and is therefore arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*State Farm*).

## A. The 2021 Rule Was a Lawful Interpretation and Its Withdrawal Was Arbitrary and Capricious

A rule is arbitrary and capricious when predicated on an errant view of the law, or a mistaken understanding of prior regulations. *See* Pltfs.' Mot. for Summ. J. at 12 (citing various cases). As such, the 2024 Rule must be set aside because the 2024 Rule is ***predicated on false legal premises***—even if the Department's decision is a reversion to a prior regulation. *See*, *e.g.*, *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) (affirming that agency action "may not stand if the agency has misconceived the law."). The

4

Department's withdrawal of the 2021 Rule and thus its claimed need to replace it with the 2024 Rule rests on two pillars: mischaracterizing the rule itself and mischaracterizing the governing law. Defendants' opposition and cross-motion make the same errors.

### i.  The 2021 Rule Is Consistent With the Statute and Case Law

Defendants claim that the Department had no choice but to withdraw the 2021 Rule because the FLSA and judicial precedent foreclose any interpretation that gives any degree of weight to a specific factor. Opp. Br. at 14–15, 18–19. That is not true. It was well within the Department's discretion to interpret the nebulous language of the FLSA to provide a measure of predictability. *See Sackett v. EPA*, 598 U.S. 651, 681 (2023) (criticizing an agency for a "hopelessly indeterminate" statutory interpretation that left the public to "feel their way on a case-by-case basis"). While the Department has now chosen to disavow any approach that would give meaningful direction to those seeking to structure their work, nothing requires that the Department ***must*** pursue such an ad hoc approach.

### 1.  The Statutory Text Is Hopelessly Ambiguous Unless Given a Crystalizing Interpretation

Federal courts begin statutory analysis by looking to the text. But unfortunately, the FLSA is unilluminating on the vital question of how to distinguish between legitimate independent contractors and employees. The

FLSA provides no definition of an independent contractor and provides only circular definitions when defining "employer" and "employee." *See* 29 U.S.C. § 203(d)–(e). The Defendants' focus on the FLSA's definition of "employ[,]" fares no better. *See* Opp. Br. at 18. Although these terms require interpretive guidance, Defendants argue that the text of the FLSA was in tension with the Department's 2021 Rule, Opp. Br. at 18–19.

Defendants argue that the FLSA's term "employ" forecloses the Department's 2021 Rule interpretation because a person employs another if they "suffer or permit [them] to work." Opp. Br. at 18–19. But this text is hopelessly nebulous. It derives meaning only from the context of its use in early 20th Century state law enactments that aimed to expand the scope of the employer-employee relationship beyond what the common law would recognize. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, n.7 (1947) (summarizing the relevant history of the phrase and its derivation from child labor laws).

This leaves open a wide range of interpretive options. For example, the California Supreme Court now interprets the "suffer or permit" standard as imposing a rigid three-part test that forecloses any independent contracting relationships when the work performed is deemed essential to the hiring entity's business model—regardless of any countervailing considerations. *See Dynamex Operations W. v. Superior Ct. of L.A.*, 4 Cal. 5th 903, 936 (2018)

6

(changing its longstanding interpretation of text derived from a 1913 enactment). By contrast, the U.S. Supreme Court has interpreted the "suffer or permit" standard as entailing an inherent economic realities test, which requires weighing a multiplicity of factors. *See Rutherford*, 331 U.S. at 730 (finding the determination of a worker's status turns on several factors). And *Rutherford*, in turn, raises the question of how the Department should balance competing factors—a question that the Department sought to answer, consistent with case law, in the 2021 Rule

At the same time, Congress did not intend to abandon the ordinary meaning of the terms "employer" and "employee." *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (affirming that statutory words are usually "interpreted as taking their ordinary, contemporary, common meaning"). Accordingly, the Department was correct to acknowledge, in the 2021 Rule, the "commonsense logic that, when determining whether an individual is in business for him- or herself, the extent of the individual's control over his or her work is more useful information than, for example, the skill required for that work." 2021 Rule, 86 Fed. Reg. at 1199. *See* Restatement (First) of Agency § 2 (1933) (recognizing that a worker who controls the performance of the work is more likely to be a contractor). And likewise, a worker who faces the risk of loss and opportunity for profit is, intuitively, more likely to be independent. *Id*.

Defendants ignore this argument. They do not rebut the idea that the FLSA incorporated the ordinary understanding of the terms "employer" and "employee." Instead, they simply reassert that the "suffer or permit to work" language "demonstrates Congress' intent for the FLSA to broadly cover workers as employees."[2] Opp. Br. at 18 (citing *Nationwide Mutual Ins. v. Darden*, 503 U.S. 318, 326 (1992)).

There is no tension between the ideas that, on one hand, the FLSA should be given a broad scope, and, on the other, that the common law definition of "employer" and "employee" is relevant, though not determinative, in contextualizing that broad scope. Consistent with both precepts, the 2021 Rule is more inclusive than the common law test—while still affording appropriate weight to the control and opportunity for profit factors. *See* 2021 Rule, 86 Fed. Reg. at 1200–01 (discussing in detail why the "core factors" analysis is broader than the common law test). This "middle way" is permissible because it gives effect to the FLSA text as a whole, including the

---

[2] If taken to its literal extreme, a rule deeming anyone an employer who "suffer[s] or permit[s]" another to perform any "work" would lead to absurd results. No one believes that a homeowner employs the plumber who fixes a leaky pipe. Yet in a literal sense the homeowner has permitted the plumber to perform work in asking for the repair. Likewise, any business that contracts with a freelance writer to do any project has—in a literal sense—suffered or permitted the writer to perform work.

"suffer or permit" language. *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018) (the FLSA text should be given a "fair reading").

Defendants insist that the FLSA's remedial goals require an especially "broad[]" and indeterminate interpretation of the employer-employee relationship. Opp. Br. at 18–19. But *Encino* repudiated the argument that the FLSA's general statement of policy puts a thumb on the scale. 584 U.S. at 88–89. Contrary to the Defendant's characterization, the *Encino* Court rejected the remedial canon of construction. *Id.* And the 11th Circuit has rejected the argument that *Encino* is limited to construing the FLSA's exemptions. *See Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1329–30 (11th Cir. 2021).

### 2.  The 2021 Rule Is Consistent with Decades of Case Law

Defendants rely heavily on general statements from various cases that have, at some point, repeated the line that the economic reality test turns on the "circumstances of the whole activity," that no single factor is "dispositive," and that the economic reality factors should not be assigned "invariably applied weight." Opp. Br. at 14–15. For this reason, they argue that the Department had to withdraw the 2021 Rule. *Id.* But Defendants flatly ignore the Department's systematic survey of every court of appeals decision between 1975–2021, which was the foundation for the 2021 Rule. Consequently, the Department has backtracked and thus failed to seriously consider the

possibility of a crystalizing construction that would give greater direction to hiring entities and contractors alike. *See* Opp. Br. at 14–18 (insisting the 2021 Rule was foreclosed by case law).

The Department's exhaustive case law survey for the 2021 Rule identified two "core" factors—i.e., (i) the nature and degree of control over work and (ii) the individual's opportunity for profit or loss—as the "most probative" factors in determining whether a worker is truly independent. 2021 Rule, 86 Fed. Reg. at 1171. The Department concluded that these two factors, control and opportunity, warrant emphasis but are not dispositive. *Id*. When those factors are aligned, there is a "substantial likelihood" that they point to the individual's proper classification. *Id* at 1179. In fact, the Department confirmed that the federal courts, *in every surveyed case,* were already applying the economic reality test such that, when the "core factors" were aligned, they also aligned with the ultimate classification of the worker. *Id*. But this was not the sea change that the Defendants claim because the 2021 Rule was, in fact, consistent with forty-five years of case law in both: (i) recognizing a substantial likelihood that a worker's classification is correct when the control and

opportunity for profit factors aligned, and (ii) ensuring adequate consideration of other relevant factors.[3]

Defendants have no answer to the 2021 Rule's systematic survey. They suggest that it was only a "coinciden[ce]" that those factors were consistently aligned. Opp. Br. at 16. But the Department could not have acted contrary to law, in 2021, when codifying a rule consistent with the uniform outcome of *every court of appeal decision since 1975*.

For that matter, Defendants cannot rely on *Scantland v. Jeffry Knight, Inc.*, because that opinion affirmed that the economic realities test can be *articulated in different ways*. 721 F.3d 1308, 1311–12 (2013) (observing that "[c]ourts have applied various" iterations of the economic realty test). The *Scantland* court enumerated a number of factors to serve as guides, while recognizing that the "overarching focus of the inquiry is economic dependence." *Id.* at 1311–12. As such, it was undoubtedly within the Department's discretion to promulgate the 2021 Rule, consistent with its thorough case law survey, because the "overarching focus" of the 2021 Rule was still "economic dependence." *Id.*

---

[3] While it is true that some courts said that the economic reality test factors should not be given "invariably applied weights," Opp. Br. at 14, this does not mean that the factors must be entirely unweighted. Even in *Rutherford* and *United States v. Silk*, the Court emphasized the opportunity for profit, while de-emphasizing less significant factors, like the hours worked. *Rutherford*, 331 U.S. at 730–31; *Silk*, 331 U.S. 704, 719 (1947).

### ii. The 2021 Rule Is Not "Mechanical" and Does Not Render Any Particular Factor "Dispositive"

Defendants argue, as the Department did when finalizing its 2024 Rule, that the 2021 Rule ran counter to precedent by adopting an impermissible "mechanical or formulaic application of the economic reality test" and by adopting a rule that makes certain factors "invariably predominate" over others. Opp. Br. at 14–15; 2024 Rule, 89 Fed. Reg. at 1651. That argument was wrong then, and it is wrong now. There is no basis for Defendants' claim that the 2021 Rule operated mechanically to codify the common law employer-employee test.[4] Opp. Br. at 19. Contrary to Defendants' "mechanistic" characterization, the 2021 Rule affirmed the holistic nature of the economic realities test. *See* 2021 Rule, 86 Fed. Reg. at 1201 (affirming the traditional economic reality factors). Because the 2024 Rule is based upon a misconception of law, it is arbitrary and capricious. *See Chenery*, 318 U.S. at 94.

The 2021 Rule does not ignore the remaining economic reality test factors, as Defendants wrongly assert. Opp. Br. at 18. The Department expressly declined to elevate its analysis of two core factors into a presumption in 2021. 86 Fed. Reg. at 1202. The 2021 Rule qualified that "this is a totality of the circumstances analysis, based on the facts." *Id*. at 1179. As discussed

---

[4] Elsewhere, the Department acknowledges that the 2021 Rule was *not* a mechanical rule. Opp. Br. at 24 (arguing certain commentators mistook the 2021 Rule as giving dispositive weight to the core factors).

12

above, the Department recognized that the core factors were "most probative," but still acknowledged the significance of three of other factors that are relevant to determining a worker's classification—i.e., skill, permanence, and whether the work is part of an "integrated unit of production." *See id*. at 1247. And under the 2021 Rule, "[t]hese factors are not exhaustive, and *no single factor is dispositive*." *Id.* at 1246 (emphasis added).

## B. The Withdrawal Failed to Consider the Department's Obligation to Promulgate Rules with Objective Standards to Which Ordinary People Can Understand and Conform

As discussed above, the Department acted lawfully when it adopted a crystalizing construction that was consistent with the approach that the federal courts of appeal had already adopted. The Department was obligated to seriously consider this crystalizing construction, because an agency must consider all important "aspect[s] of the problem" it confronts. *State Farm*, 463 U.S. at 43. Here the problem it confronted was a question of how to provide meaningful direction for the regulated community—and how the Department should set its own enforcement priorities—given the inherent ambiguities in the FLSA's text. Even if the FLSA forecloses a "mechanistic" approach to the economic realities test, it cannot foreclose due process requirements.

Due process requires that the Department must interpret the statute with "sufficient definiteness that ordinary people can understand what conduct is prohibited" and in a manner that discourages "arbitrary and discriminatory

13

enforcement." *Sackett*, 598 U.S. at 666 (citation omitted). That is what the 2021 Rule does. But instead of grappling with that constitutional mandate, the Defendants cherry-pick scattered circuit court language to arrive at an ambiguous and standardless rule.

The Department has no answer to Plaintiffs' void for vagueness arguments. It just baldly declares "that the 2024 Rule provides more predictability" for regulated parties than the 2021 Rule. Opp. Br. at 21. That is nonsense. In the real world, people need objective rules with predictable results because they need to understand their legal obligations when arranging their affairs. *Sackett*, 598 U.S. at 666. Regulated parties cannot be left to "feel their way on a case-by-case basis" when they face major liabilities for any misstep. *Id*. at 681 (citations omitted). As such, it was appropriate for the Department, in 2021, to develop an interpretive lens that would provide at least a measure of direction in recognizing that there is substantial likelihood that a worker's classification was correct when the control and opportunity factors were aligned.

By contrast, the 2024 Rule refused to consider the regulated community's need for meaningful direction. It is no answer for the Defendants

to say that the FLSA requires a completely ad hoc approach.[5] Due process and the constitutional avoidance canon demand that courts (and federal agencies) reject interpretations that create void for vagueness problems. *See Crowell v. Benson*, 285 U.S. 22, 62 (1932) (affirming courts must prefer a reasonable construction that avoids constitutional problems).

The 2024 Rule is, without question, unconstitutionally vague. The Plaintiffs and those with whom they work stand in the same position as the Sackett family, which sought to build a home on their land in Idaho. *Sackett*, 598 U.S. at 661–62. The Sacketts were left in a decades-long quandary, and threatened with ruinous liabilities, because it was entirely unclear how far the Environmental Protection Agency's jurisdictional reach extended under the Clean Water Act. *Id.* The Supreme Court ultimately repudiated EPA's nebulous interpretation, in part, because it ran afoul of the void for vagueness doctrine. *Id.* at 681 (stressing that the agency's interpretation was "hopelessly indeterminate").

Like the Sacketts, there is simply no way for the Plaintiffs or their clients to know, under the Defendants' approach, when they are crossing the line into

---

[5] Even if it is true that a void for vagueness claim must be assessed on the facts of the case at hand, Opp. Br. at 28, the Administrative Procedure Act requires federal agencies to consider all important aspects of the problem when promulgating regulation. As such, the Department had a responsibility to consider void for vagueness concerns more generally when promulgating the 2024 Rule.

an unwanted employment relationship. Because the 2024 Rule prohibits the Department from giving any degree of weight to any given factor, the regulated public is grasping for direction. 2024 Rule, 89 Fed. Reg. at 1651, n.127 (stating it "is impossible to assign to each of these factors a specific and invariably applied weight"). All they find is a non-exhaustive list of indeterminate factors that the Department *might* choose to weigh differently in any given case.

In the absence of any objective standard or interpretation, the Plaintiffs and their clients are left playing a high stakes game of craps. They can choose to roll the dice and hope that the Department will exercise its ad hoc enforcement discretion in their favor. Risk adverse companies will, of course, err on the side of caution—which means treating everyone like an employee. *See* How to Distinguish Between Employees and Independent Contractors. Nat. Fed. of Ind. Bus. (July 20, 2016) (observing that companies err on the side of classifying workers as employees to "avoid [] potentially catastrophic liabilities"). [6]

Even when multiple factors seem to militate in favor of an independent contractor classification, the hiring entity is forced to bet that the Department will not choose to put greater weight on other countervailing factors—including unenumerated considerations that the Department *might* deem relevant in its

---

[6] https://www.nfib.com/content/legal-compliance/labor/how-to-distinguish-between-employees-and-independent-contractors-74759/ ("NFIB Guidance").

ad hoc approach. For example, Plaintiff Singer has suspended work with independent contractors because she does not want to risk liability under the 2024 Rule's wholly indeterminate approach. Plaintiff Singer wants to work with other writers who would perform work "critical, necessary, or central" to her "principal business[,]" which is writing. 29 C.F.R. § 795.110(b)(5). This factor invariably cuts against her under the 2024 Rule. And because the Department disavows any knowable formula for weighing the various economic reality factors, she has no way of being sure that the Department will not weigh this factor heavily against her.

Likewise, the "[d]egree of permanence of the work relationship" factor may cut against anyone who chooses to continue working with a contractor on a regular basis because the Department may deem this a "continuous" relationship. 29 C.F.R. § 795.110(b)(3). For example, if Plaintiff Singer had worked with specific writers in the past, her risk would be all the greater in working with them again. Because the 2024 Rule is wholly indeterminate, there is no way to know in advance how heavily the Department would weigh this factor. After all, the Department stresses that "the weight to give [any given] factor may depend on the facts and circumstances of the particular relationship." 2024 Rule, 89 Fed. Reg. at 1742.

Worse still, even if all but one factor seems to point toward an independent contractor status, there is still no way to know, *ex ante*, how the

17

Department will choose to weigh the factors under the 2024 Rule. Every factor is amorphous. And any combination of factors may result in whatever outcome the Department deems fit in any given case. *See* 29 C.F.R. § 795.110(a)(2) (emphasizing that "no one factor or subset of factors is necessarily dispositive"). This is in contrast to the 2021 Rule, which provided guidance on which factors were most helpful in guiding the regulated community, while not disregarding other probative factors. *See supra* 9–11.

Further exacerbating vagueness and due process problems, the 2024 Rule creates even more uncertainty than the Department's pre-2021 sub-regulatory guidance. For example, the 2024 Rule provides that the control factor may cut against an independent contractor classification if the hiring entity controls "the economic aspects of the working relationship." 2024 Rule, 89 Fed. Reg. at 1693. The Department asserts that this is a "common formulation" of the control factor. Opp. Br. at 26. But it fails to point to even a single appellate decision using this formulation. *Id.* at n.14 (identifying only cases looking to "supervision and monitoring" of workers under the control factor). Likewise, the new rule provides that a worker is more likely to be deemed an employee if their work is "critical, necessary, or central" to the contracting company's business, even though it admits that the Supreme Court has never used this formulation. *See* Opp. Br. at 25. While the Department insists this approach is more probative to the ultimate inquiry, it ignores that

this new articulation calls into question essentially every business model that relies on independent contractors. In any event, the Department is wrong in asserting that the 2024 Rule provides greater clarity simply because it (supposedly) restores the *status quo ante*. Opp. Br. at 3, 10. Even if the 2024 Rule was simply turning back the clock, that does not resolve the problem that people, like Plaintiff Singer, confront daily in trying to navigate these issues. The Department was required to offer a crystallizing construction, or at a minimum, explain why it was leaving the regulated community without one.

## II.    Plaintiffs Have Article III Standing

Defendants argue that Plaintiffs lack standing because their injuries are too speculative. Opp. Br. at 8–9. Defendants also argue that Plaintiffs lack standing because the 2024 Rule simply restores the Department's historic approach to the economic reality test. Opp. Br. at 3, 10. However, this assertion begs the question; it assumes this Court will accept the Defendants' view on the merits. But "standing in no way depends on the merits." *Chiles v. Thornburgh*, 865 F.2d 1197, 1202 (11th Cir. 1989) (quoting *Warth*, 422 U.S. at 500); *see also W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury,* 59 F.4th 1124, 1137 (11th Cir. 2023) (recognizing that the Treasury Secretary's argument against plaintiffs' standing goes to the merits of the plaintiffs' claims). Both arguments fail.

### A.   Injury to Singer as a Hiring Entity

Defendants acknowledge that Plaintiff Singer must determine the proper classification of anyone who performs work on her projects. Opp. Br. at 10. And they do not dispute that anyone who misclassifies an employee may be subject both to major civil liabilities and potential criminal prosecution. Nonetheless, Defendants deny that the Department has caused injury to Singer in removing the certainty that she enjoyed under the 2021 Rule, which had enabled her to make classification decisions with confidence until its withdrawal and substitution with the 2024 Rule.[7]

Defendants argue that it is unreasonable for Singer to be concerned about liabilities under the 2024 Rule because that rule merely restored the Department's historic approach to the economic realities test. *Id*. But this ignores that the 2021 Rule changed the legal landscape to give much needed predictability to the economic realities test, which had been lacking. And in changing the legal landscape *again*, the Department has now made it more complicated for Singer (or anyone else) to know when they can classify a worker as an independent contractor.[8]

_____

[7] This is an injury capable of redress because a decision setting aside the 2024 Rule would restore the 2021 Rule; this would provide Singer with the predictability she needs to safely commission subcontractors again.

[8] Defendants assert, without authority, that Singer should have alleged that she changed her business practices in reliance on the 2021 Rule. Opp. Br. 10. But her pre-2021 business practices are irrelevant to the new legal landscape

Defendants next argue that Singer has responded unreasonably to the 2024 Rule because the Department has provided guidance suggesting that freelance writers "may" sometimes be classified as independent contractors. Opp. Br. at 9. But the 2024 Rule made clear that the Department will take an entirely ad hoc approach to enforcement. 2024 Rule, 89 Fed. Reg. at 1639 (stressing that the Department will no longer give any factor "predetermined weight"). Because Singer cannot know in advance how the Department will weigh the various factors, she has reasonably exercised prudence. This is a rational response to regulatory uncertainty. *See supra*, NFIB Guidance.

## B.   Injury to Independent Contractors

### i.   Contractors Are the Object of Regulation

Defendants argue that Plaintiffs lack standing to challenge the 2024 Rule in their capacity as independent contractors. But Plaintiffs are not merely "concerned bystanders." *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1556 (June 13, 2024). As independent contractors, the Plaintiffs are the ***subject of regulation***. Therefore, they have a "personal stake in the outcome" of this controversy. *Warth*, 422 U.S. at 498 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

---

under the Department's 2024 Rule, which was a significant departure from both the 2021 Rule and the historic economic realities test.

Defendants argue that the Department's regulation only directly affects businesses that work with contractors. This is wrong because the 2024 Rule interferes with independent contracting relationships on both sides. True, the hiring entity bears the ultimate risk if there is a misclassification. But the Rule directly affects the right of independent contractors to enter mutually beneficial service agreements because—in expanding the scope of the FLSA's employer-employee relationship—the 2024 Rule abrogates freedom of contract.[9]

Independent contractors are required now to conform their working relationships to the 2024 Rule if they want to ensure that the Department will not deem them subject to an unwanted employer-employee relationship. Accordingly, the Plaintiffs have reasonably responded by changing their business practices and adjusting business relationships to minimize the threat of misclassification. *See* Singer Dec ¶ 7, 10; Kavin Dec. ¶ 14; Kaplan Dec. ¶ 11. And they are required to continuously exert energy evaluating each new contract to ensure that they are comporting their business practices to avoid

---

[9] The purposes of both the 2021 Rule and 2024 Rule are to determine the status of a worker, and thus whether the FLSA's requirements are germane. *See* 2021 Rule, 86 Fed. Reg. 1168, and 2024 Rule, 89 Fed. Reg. 1638. Both Rules are regulating business relationships—not merely "employers."

an undesirable legal classification.[10] Warren Dec. ¶ 12; Kaplan Dec. ¶ 11. This is sufficient basis for standing. *See Food & Drug Admin.*, 144 S. Ct. at 1556 (noting that injury and causation are "easy" to establish when regulations "require or forbid some action by the plaintiff.").

Defendants cannot evade judicial review by arguing that the Plaintiffs must be reclassified as employees by the companies with whom they work to establish standing. That is wrong. It is the 2024 Rule (not the actions of a third party) that governs the Department's classification of workers. Because the Department requires the Plaintiffs to conform their relationships to the 2024 Rule to maintain their independent status, they are suffering a "here-and-now injury." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023) (quoting *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2196 (2020)).

### ii.  Plaintiffs Have Lost Work Under the 2024 Rule

The 2024 Rule has already prompted some businesses to sever their ties with the Plaintiffs. Kavin Dec. ¶ 14 ("I have already lost opportunities for projects"); Kaplan Dec. ¶ 10 ("One client has already told me she will not use my editing services for fear of running afoul of the new Rule"); Singer Dec. ¶ 10

---

[10] An unintended "employee" designation would be problematic because it would give heightened reason for other clients to classify the Plaintiffs as employees or to sever their working relationships.

(stating she will not use freelancers under the rule). *See also* Kavin Dec. ¶ 15 (Plaintiff had to renegotiate her contracts with two clients). These "general factual allegations" are "sufficient" at the motion-to-dismiss stage. *Worthy v. City of Phenix City*, 930 F.3d 1206, 1214 (11th Cir. 2019) (internal quotations omitted). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that elements of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation."). And it matters not that these are consequential injuries.

There is no question that standing can be based on the "predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). *See Bennett v. Spear*, 520 U.S. 154, 169 (1999) (affirming standing can be based on "injury produced by determinative or coercive effect upon the action" of a third party). And it was entirely predictable that companies would respond to the regulatory uncertainty created by the 2024 Rule's freewheeling approach by taking steps to reduce their risk. Industry groups warned this would happen.[11] After all, the only way to be

---

[11] *See* Comment Letter of U.S. Chamber of Commerce, et al., Regulations.gov (Dec. 14, 2022) (explaining that the 2021 Rule provided "badly needed clarity" and that removing that clarity would discourage businesses from using contractors), https://www.regulations.gov/comment/WHD-2022-0003-53819.

entirely safe is to err on the side of classifying everyone as an employee.[12] *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127–29 (2007) (affirming that parties should not have to expose themselves to liability to establish standing). As these are the predictable effects of the Department's action, there is "substantial risk" that the harm will continue to occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied, and Plaintiffs' Motion should be granted.

DATED: July 2, 2024.


Respectfully submitted,


*/s/ Edward Bedard*
EDWARD BEDARD
Ga. Bar No. 926148
Robbins Alloy Belinfante Littlefield LLC
500 14th Street, NW
Atlanta, Georgia 30318
Telephone: (404) 856-3263
Fax: (404) 856-3255
Email: ebedard@robbinsfirm.com

/s/ Luke Wake
LUKE A. WAKE
Cal. Bar No. 264647*
WILSON C. FREEMAN
Ariz. Bar. No. 036953*
SAMANTHA ROMERO
Cal. Bar No. 344476**
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814

---

[12] *Cf.* Vox Media Cuts Hundreds of Freelance Journalists as AB 5 Change Looms, LA Times (Dec. 17, 2019), https://www.latimes.com/business/story/2019-12-17/vox-media-cuts-hundreds-freelancers-ab5 (discussing industry response to changes in California law governing independent contractors).

Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: lwake@pacificlegal.org
Email: wfreeman@pacificlegal.org
Email: sromero@pacificlegal.org

*Counsel for Plaintiffs*

*\*Pro Hac Vice*
*\*\*Pro Hac Vice motion forthcoming*

26

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)

Counsel for Plaintiffs hereby certifies that this brief has been prepared in 13-point, Century Schoolbook font.

s/ Luke Wake
LUKE A. WAKE

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, I served this document via the Court's electronic filing system to the Defendants.

BRIAN M. BOYNTON
Acting Assistant Attorney General
JULIE HARRIS STRAUS
Assistant Director, Federal Programs Branch

Lisa A. Olson
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12200
Washington, D.C. 20005
lisa.olson@usdoj.gov
*Counsel for Defendants*

s/ Luke Wake
LUKE A. WAKE