UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINSVILLE DIVISION

WARREN, *et al.*,                    )
          Plaintiffs,            )
        v.                            )          Civil Action No.
UNITED STATES DEPARTMENT   )          2:24-cv-00007-RWS
    OF LABOR, *et al.*,             )
          Defendants.           )

## DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

## INTRODUCTION

The premise of plaintiffs' claim that the 2024 Rule, including its recission of the 2021 Rule, violates the APA is based on a fundamental misunderstanding of the economic reality analysis applied by courts.  In their quest for "[o]bjective [s]tandards [w]hich [o]rdinary [p]eople [c]an [understand]," ECF No. 35 ("Pl. Rep. at 18"), plaintiffs overlook the fact that the economic reality analysis, as reflected in the 2024 Rule, was established through 70 years of judicial precedent and is not based on "any formalistic or simplistic approach," *Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311 (5th Cir. 1976), or a "rule of thumb," *U.S. v. Silk*, 331 U.S. 704, 716 (1947).  Rather, it requires the consideration of six "[non]exclusive" factors to "gauge the degree of dependence" of a worker on an employer" – an inquiry which necessarily "depends on the facts of the case" and in which "[n]o one factor is controlling" or "dominant."  *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312

& n.2 (11th Cir. 2013).  By contrast, the 2021 Rule's predetermined weighting of two "core factors" conflicted with decades of precedent establishing the economic reality analysis that guides courts.  Confusion about how to apply the 2021 Rule, especially given its deviation from applicable circuit case law, would have made mistaken classification decisions by employers more likely, rather than promoting greater predictability, as plaintiffs argue.

In addition to the flawed premise of plaintiffs' arguments on the merits, plaintiffs fail to establish standing to challenge the 2024 Rule because their alleged harm is based on nothing but speculative fears and imagined risks prompting self-initiated actions.  Plaintiffs' attack on the alleged "uncertainty" created by the 2024 Rule rings particularly hollow given that the 2024 Rule merely reflects 70 years of precedent under which plaintiffs operated without alleged injury prior to 2021 – when the Department had no generally-applicable regulations on the FLSA economic reality analysis at all.

## ARGUMENT

### I. Plaintiffs Lack Standing

Because plaintiffs fail to articulate any actual, concrete harm resulting from the 2024 Rule, they lack standing.  *Murthy v. Missouri*, _ U.S. _, No. 23-411, 2024 WL 3165802, at *7 (U.S. Jun. 26, 2024).  Remarkably, plaintiffs still fail to cite a single instance in which their classification actually changed, or they changed a

worker's classification, as a result of the 2024 Rule.  Plaintiffs fall short because, as defendants have explained, *see* ECF No. 19-2 ("Def. Opp.") at 9-10, if plaintiffs or their workers were properly classified prior to the 2021 Rule, the 2024 Rule is unlikely to change their classifications or how they classify any workers that they engage.  That is because the 2024 Rule's analysis reflects the same analysis that courts have applied for decades, 89 Fed. Reg. 1658, and under which plaintiffs operated without apparent injury.[1]

Plaintiffs make three unavailing arguments in support of their alleged standing.  First, plaintiffs contend that DOL has "remov[ed] the certainty that [plaintiff Singer] enjoyed under the 2021 Rule, which had enabled her to make classification decisions with confidence."  Pl. Rep. at 25.  But plaintiff Singer's subjective "confidence" level is neither "concrete and particularized" nor "actual or imminent"; rather, it is "conjectural or hypothetical," and accordingly does not constitute injury in fact.  *Booker v. Sec'y, Fla. Dep't of Corr.*, 22 F.4th 954, 957 (11th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560-61).  It therefore cannot serve as a basis for standing.

---

[1] Plaintiffs also fail to cite a single instance in which their classification actually changed or they changed a worker's classification as a result of the 2021 Rule, wholly undercutting any alleged reliance on that rule.  Instead, plaintiffs dodge this question, contending that their pre-2021 business practices are irrelevant, Pl. Rep. at 25 n.8.  But those practices are directly relevant to the question of standing, because the 2024 Rule reflects 70 years of precedent under which plaintiffs operated prior to 2021 – with no alleged harm.

Similarly, plaintiff Singer's decision to "suspend[] work with independent contractors [that she engages] because she does not want to risk liability," Pl. Rep. at 22, is entirely self-initiated and not based on any imminent risk of harm resulting from the 2024 Rule. *See City of S. Miami v. Governor*, 65 F.4th 631, 640 (11th Cir. 2023) (Plaintiffs cannot "'manufacture standing' . . . by inflicting harm on themselves based on 'highly speculative' fears . . . .") (quoting *Clapper*, 568 U.S. at 402, 410).  For example, plaintiffs contend that having engaged specific contractors in the past increases plaintiff Singer's risk if she engages them again, Pl. Rep. at 22, but the 2024 Rule recognizes that an independent contractor may have "regularly-occurring fixed periods of work" without becoming an employee.  29 C.F.R. § 795.110(b)(3); 89 Fed. Reg. 1687.  Finally, even if plaintiff Singer may not "know in advance how DOL will weigh the various factors," Pl. Rep. at 26, it is speculative to suggest that DOL ever would be involved in classification decisions involving her, and she is in no different position than any other member of the public who is not entitled to a personalized application of generally applicable interpretive guidance.

Moreover, contrary to plaintiffs' contention, defendants did *not* "acknowledge" that plaintiff Singer herself must determine the proper classification of anyone who performs work for her, and defendants *do* "dispute" that "anyone" who misclassifies an employee may be subject to liability and potential criminal

prosecution. *See* Pl. Rep. at 25. The FLSA does not apply to every business or person that hires someone to perform work. Coverage under the FLSA may be based on "enterprise coverage" or "individual coverage." *See, e.g.*, Fact Sheet #14: Coverage Under the Fair Labor Standards Act (FLSA) | U.S. Department of Labor (dol.gov). "Enterprise coverage" generally consists of having at least two employees and an annual dollar volume of sales or business done of at least $500,000. "Individual coverage" applies where individual workers are "engaged in commerce or in the production of goods for commerce." Because plaintiffs provide absolutely no facts demonstrating that plaintiff Singer is covered by the FLSA in the first place when she hires others (*i.e.*, as an employer), plaintiffs' argument that she was harmed in that capacity by the 2024 Rule must fail.

Plaintiffs' second, equally futile standing argument rests on the inaccurate assertion that plaintiffs, "[a]s independent contractors . . . are the **subject of regulation**." *Id.* at 26. However, the 2024 Rule provides guidance "that is intended to serve as a practical guide to employers and employees." 29 C.F.R. § 795.100 (internal quotations and citation omitted). In particular, employers have obligations under the FLSA to their workers who are employees under the FLSA (and thus entitled to the Act's benefits), rather than to independent contractors. *See* 29 C.F.R. § 795.105(a). Plaintiffs protest that independent contractors "are required now to conform their working relationships to the 2024 Rule," Pl. Rep. at 28, but plaintiffs

do not allege specific facts demonstrating that they conformed their working relationships to the 2021 Rule, and the 2024 Rule does not "require" anyone to do anything, so this is not a valid basis for standing.[2]

Third, based on speculative, hearsay assertions regarding the motives of alleged third parties, plaintiffs claim that the "coercive effect" of the 2024 Rule "has prompted some businesses to sever their ties" with plaintiffs. Pl. Rep. at 28-29. Even if such hearsay were admissible, the 2024 Rule merely provides DOL's "general interpretations," 89 Fed. Reg. 1741-42 (29 C.F.R. § 795.100), and thus does not impose any requirements or "force[]" anyone to do anything. *See* Pl. Rep. at 7. Moreover, workers who were properly classified prior to the 2021 Rule are unlikely to be reclassified under the 2024 Rule's economic reality analysis. 89 Fed. Reg. 1658-59. Thus, the contention that "the only way to be entirely safe is to err on the side of classifying everyone as an employee," Pl. Rep. at 30, lacks credibility considering that everyone was not classified as an employee under the decades of judicial precedent which the 2024 Rule reflects. Indeed, plaintiffs were not

---

[2] Plaintiffs' invocation of "freedom of contract," Pl. Rep. at 27, is unavailing. "The FLSA is designed to defeat rather than implement contractual arrangements. . . . In . . . FLSA cases we have looked past the contractual terms." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1544-45 (7th Cir. 1987) (concurring opinion); *Nieman,* 775 Fed. Appx. at 624 ("The economic reality inquiry is not governed by . . . the contract that controls [the employer-employee] relationship."). That is, parties cannot contract around their obligations under the FLSA.

classified as employees and did not classify everyone as employees under that precedent, and their contention that now everyone will be classified as an employee is based on nothing but speculation and unfounded fears.  In addition, glaringly absent are any facts showing that plaintiffs' clients changed their practices in ways favorable to plaintiffs after the 2021 Rule was promulgated, and that they have now reversed those changes, further underscoring the tenuous connection between the 2024 Rule and plaintiffs' assertions of harm.[3]

## II.    The 2024 Rule and Rescission of the 2021 Rule Comply With The APA

Plaintiffs' argument that the 2024 Rule, including the rescission of the 2021 Rule, violates the APA is entirely based on plaintiffs' inaccurate depiction of the 2021 Rule.  When properly understood, the 2024 Rule is wholly consistent with the FLSA and decades of precedent, and accordingly, the APA.

### A.    The 2024 Rule Reflects, and the 2021 Rule Conflicted with, 70 Years of Precedent

Plaintiffs' characterization of the 2021 Rule as "[c]onsistent with [d]ecades of [c]ase [l]aw," Pl. Rep. at 14, states the opposite of what is true.  The 2021 Rule did not "synthesize . . . economic reality test case law," Pl. Rep. at 8, but rather,

---

[3] Contrary to plaintiffs' claim, Pl. Rep. at 24, plaintiffs' lack of standing is independent of the merits.  It is based on plaintiffs' failure to articulate any injury in fact actually resulting from the 2024 Rule, which does not require anyone to do anything, much less compel or require plaintiffs to change classifications or business practices.

conflicted with it.  The 2021 Rule, not the 2024 Rule, "misconceived the law," *id.*, by according predetermined weight to two economic reality factors, declaring them "most probative," when no court has ever done so.  In fact, all courts have held the opposite – that it is improper to assign any factor or factors *predetermined weight* and that no factor or factors are determinative.  The 2024 Rule's approach is therefore neither "ad hoc" nor "new," *id.* at 7, 26, but rather, reflects 70 years of precedent.[4]  And the suggestion that the 2024 Rule leaves the public "to feel their way on a case-by-case basis," *id.* at 10, ignores that the economic reality analysis is necessarily fact-dependent.

### B.   The 2021 Rule Contradicted, Rather Than "Crystalized," Decades of FLSA Interpretation

Plaintiffs' assertion that the FLSA's definition of the "hopelessly nebulous" term "employ" needs "[c]rystalizing [i]nterpretations," *id.* at 10-11, ignores the definition's "suffer or permit" language, 29 U.S.C. § 203(g), for which courts have provided helpful interpretations for decades.  *See, e.g.*, *Scantland*, 721 F.3d at 1311; *Pilgrim Equip.*, 527 F.2d at 1311.  Plaintiffs claim that the FLSA allows for a "wide range of interpretive options," Pl. Rep. at 11, but then go on to admit that the Supreme Court has interpreted this standard as one embodying an economic reality

---

[4] Consistent with *Scantland,* 721 F.3d at 1312, the 2024 Rule applies six (not "seven," *see* Pl. Rep. at 7) factors, and – as the 2021 Rule did – permits, but does not require, the consideration of additional factors.

analysis, *id.* at 12.  That analysis, as described in *Rutherford* and *Silk*, and as adopted in the 2024 Rule, relies on multiple factors in which no one factor or set of factors carries a predetermined weight.  89 Fed. Reg. 1641-42.[5]

Plaintiffs cite the 1933 Restatement (First) of Agency for their argument that the 2021 Rule's "core" control factor is "more useful" than other factors, Pl. Rep. at 12, but the Restatement, which espouses the common law, predates the FLSA.  And the FLSA expressly rejected the common law standard, *contra* Pl. Rep. at 13, for determining whether a worker is an employee in favor of defining "'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. v. Darden*, 503 U.S. 318, 326 (1992).

By resorting to "commonsense logic" to defend the 2021 Rule's predetermined weighting of the control factor, Pl. Rep. at 12, plaintiffs implicitly concede that there is no basis in caselaw for doing so.  What plaintiffs characterize as a "middle way" analysis in the 2021 Rule, *id.* at 13, improperly deviated from the approach that the courts and DOL had been taking for decades, and which DOL

---

[5] Plaintiffs' stray citation to a state Supreme Court ruling considering a suffer or permit standard under state law is inapposite to the analysis that federal courts have always applied under the FLSA—an analysis plaintiffs acknowledge.  Pl. Rep. at 11-12.

reasonably determined would have caused confusion, disruption, and litigation.[6]  89 Fed. Reg. 1656.

Such confusion was evident in comments DOL received when it proposed to rescind and replace the 2021 Rule.  *Id.*  For example, several commenters inaccurately described the 2021 Rule as establishing a "two factor test," *id.*, while others mistakenly assumed that non-core factors should be considered only when the two core factors pointed to opposite classification outcomes, *id.* at 1656 & n.161. Some commenters erroneously assumed there was a reduced need to consider the non-core factors under the 2021 Rule, *id.* at 1656 & n.162, while others equated the 2021 Rule's economic reality test with a common law control test, *id.* at 1656 & n.163.  Such confusion was unsurprising given the 2021 Rule's novel analysis, and reinforces the reasonableness of DOL's determination that the 2021 Rule could have resulted in misapplication of the economic reality test.  *Id.*

Nor does the 2024 Rule embody a "remedial canon of construction" that conflicts with *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018).  Pl. Rep.

---

[6] Contrary to plaintiffs' mischaracterization, defendants have never claimed that the 2021 Rule "codif[ied] the common law employer-employee test," Pl. Rep. at 17. Rather, among DOL's concerns with the "core factors" approach was that the 2021 Rule impermissibly narrowed the analysis in the direction of the common law test. 89 Fed. Reg. 1652.  Similarly, defendants have never asserted that the 2021 Rule "ignore[s] the remaining economic reality test factors," Pl. Rep. at 17.  Rather, as explained in the 2024 Rule, the 2021 Rule relegated them to lesser probative value, resulting in confusion which could have led to the potential misclassification of workers as independent contractors.  89 Fed. Reg. 1656.

at 14.  As an initial matter, "*Encino* did not hold that the FLSA's remedial purpose may never be considered, [but] . . . simply . . . that it is a 'flawed premise that the FLSA pursues its remedial purpose at all costs.'"  *See* 89 Fed. Reg. 1668 n.221.   In any event, the 2024 Rule does not rely on the "remedial purpose" of the Act or any principle of statutory construction, but instead relies on the clear textual indication in the Act's inclusion of the definitional "suffer or permit" language that broad coverage was intended.  89 Fed. Reg. 1668 & n.221 (quoting 29 U.S.C. § 203(g)).  And to the extent DOL mentioned the FLSA's remedial purpose, it specifically referenced that "purpose *as interpreted by [the] courts*." 89 Fed. Reg. 1639, 1640, 1647, 1649, 1661, 1663, 1725, 1726, 1739 (emphasis added).  Those courts include the Eleventh Circuit, which has acknowledged the FLSA's protections were intended to avoid "conditions that were detrimental to the health and well-being of workers." *Scantland*, 721 F.3d at 1311.  Furthermore, "[t]here is no need to rely on the 'fair reading' principle" articulated in *Encino* here because "there is a clear textual indication in the Act's definitions, by the inclusion of the 'suffer or permit' language, that broad coverage under the Act was intended," but even if the "fair reading" principle does apply, DOL's interpretation is "fair." *Id.* at 1668 n.221.

### C.    The Appellate "Survey" Did Not Support the 2021 Rule

Plaintiffs argue that defendants rely on "various cases that have, at some point," stated that the economic reality test "turns on the 'circumstances of the whole

11

activity,' that no single factor is 'dispositive,' and that the economic reality factors should not be assigned 'invariably applied weight.'"  Pl. Rep. at 14.  But *all* cases have *consistently* held this.  And regarding the alleged "survey" of court of appeals decisions which are "the foundation for the 2021 Rule," *id.*, as DOL pointed out, "while there are certainly many cases in which the classification decision made by the court aligns with the classification indicated by the control and opportunity for profit or loss factors, the 2021 IC Rule did not identify *any* cases stating that those two factors are 'more probative' of a worker's classification than other factors."  89 Fed. Reg. 1651 (emphasis added).  In addition, DOL determined that the 2021 Rule "made assumptions about the reasoning behind the courts' decisions that are not clear from the decisions themselves and in some cases are contrary to the decisions' instructions that the test should not be applied in a mechanical fashion."  *Id.* at 1651 & n.132.  In fact, as DOL explained, "most of the decisions cited as supporting a 'core factor' analysis based on the case law review explicitly *deny* assigning any predetermined weight to these factors, and instead state that they considered the factors as part of an analysis of the whole activity, with no determinative single factor."  *Id.* at 1651 & n.133 (emphasis added) (citing cases).

### D.    The 2024 Rule Is Clear and Consistent With Due Process

1.  The claim that the 2024 Rule is "vague[]" and that "people need objective rules with predictable results," Pl. Rep. at 19, confuses vagueness with the fact that

the economic reality analysis by definition requires consideration of the totality of

the circumstances, weighing six non-exhaustive factors, and is not subject to "neat

diagnostic formulas," *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir.

1987). Such analyses are not uncommon. For example, the Eleventh Circuit applies

non-exhaustive, multi-factor analyses in a variety of situations under the FLSA. *See*

*Scantland*, 721 F.3d at 1311-12 (employee or independent contractor status under

the FLSA); *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1209-13 (11th Cir.

2015) (employee or intern status under the FLSA); *Layton v. DHL Express (USA),*

*Inc.*, 686 F.3d 1172, 1175-1181 (11th Cir. 2012) (joint employer status under the

FLSA). In any event, the 2024 Rule's preamble provides clear explanations and

examples of how to conduct the analysis applying the factors, and the regulatory text

itself is short, written in plain language, and has since been accompanied by various

sub-regulatory guidance documents that expound on the regulation. *See* 89 FR

1741-43 (containing, in these two pages of the Federal Register, the new regulatory

language added as a result of the 2024 rulemaking); Fact Sheet 13: Employment

Relationship Under the Fair Labor Standards Act (FLSA) | U.S. Department of Labor

(dol.gov). In other words, the 2024 Rule is in language that ordinary people can

understand, contrary to plaintiffs' contention. *See* Pl. Rep. at 18.[7] And, the degree

---

[7] Moreover, an inchoate "void for vagueness" claim does not support the
conclusion that agencies are "required" to provide a "crystallizing construction,"

of weight accorded to a particular factor understandably depends on the facts of each case, consistent with the fact-specific economic reality analysis.[8]

2. Plaintiffs contend that the 2024 Rule is "a significant departure" from the historic economic realities test, Pl. Rep. at 26 n.8, but the two bases for this assertion are invalid. First, plaintiffs contend that defendants have failed to point to any appellate decisions that use the term "economic aspects of the working relationship" in connection with the control factor. *Id.* at 23. But the concept of this formulation is embodied in many decisions, including *Scantland*, which states that "'[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.'"[9]

Second, plaintiffs contend that uncertainty is created by the 2024 Rule's use of the term "critical, necessary, or central" to the potential employer's business in

_____

Pl. Rep. at 24, of every statutory term, particularly where there is ample case law informing the public as to how these kinds of inquiries are analyzed.

[8] Plaintiffs' argument regarding due process is waived, as it was not raised in the Complaint and was mentioned for the first time in their reply brief. Pl. Rep. at 18. In any event, an interpretive regulation that does not impose any requirement on any employer cannot deprive anyone of due process.

[9] 721 F.3d at 1313 (quoting *Pilgrim Equip.,* 527 F.2d at 1312-13); *see* 89 Fed. Reg. 1693 & n.364 (citing *Scantland*, 721 F. 3d at 1314 (finding workers to be employees, in part, because they "were subject to meaningful supervision and monitoring by" their employer); *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343-44 (5th Cir. 2008) (finding that control weighs in favor of employee status because the employer "controlled the 'meaningful' economic aspects of the business")).

connection with the integral factor.  Pl. Rep. at 23.  But this terminology is consistent with courts' understanding of the integral factor as being focused on the importance or centrality of the functions performed,[10] rather than the 2021 Rule's focus on "the extent of [a worker's] integration [into a business's production process]."  87 Fed. Reg. 62253, *cited in* 89 Fed. Reg. 1707 n.456.  In any event, the integral factor alone would not be dispositive, and there is no basis in law or fact for plaintiffs' assertion that this formulation of the integral factor calls into question "every business model that relies on independent contractors."  Pl. Rep. at 24; *see* 89 Fed. Reg 1710 (discussing the fact that "not all workers who perform integral work are employees" and that "the integral factor is just one area of inquiry that is considered along with the other factors to reach the ultimate determination of economic dependence or independence").

## **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss or alternatively for summary judgment should be granted, and plaintiffs' motion for summary judgment should be denied.

Dated: July 23, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

---

[10] *See*, *e.g.*, *Scantland*, 721 F.3d at 1319 (integral factor favored employee status where workers played an "integral role" in and were the "backbone" of the employer's business).

JULIE STRAUS HARRIS
Assistant Director, Federal Programs Branch


*/s/ Lisa A. Olson*
LISA A. OLSON
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Room 12200
Washington, D.C. 20005
Telephone: (202) 514-5633
Email: Lisa.Olson@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I certify that the document to which this certificate is attached has been

prepared with one of the font and point selections approved by the Court in Local

Rule 5.1B for documents prepared by computer.

/s/ Lisa A. Olson
LISA A. OLSON
Senior Trial Counsel