# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

KARON WARREN, DEBORAH
KAPLAN, KIMBERLY KAVIN, and,
JENNIFER SINGER,

       Plaintiffs,

       v.

UNITED STATES DEPARTMENT
OF LABOR, *et al.*,

       Defendants.

Civil Action No.

2:24-CV-7-RWS

## <u>ORDER</u>

This case comes before the Court on dispositive cross-motions: (1)

Plaintiffs' Motion for Summary Judgment [Dkt. 15]; and (2) Defendants' Cross-

Motion to Dismiss or Alternatively for Summary Judgment (the "Cross-Motion to

Dismiss," and together with Plaintiffs' Motion for Summary Judgment, the "Cross-

Motions") [Dkt. 19]. Those Cross-Motions are fully briefed. Having reviewed the

parties' briefs and the record, the Court enters the following Order.

# BACKGROUND

## I. Factual Background[1]

This declaratory judgment action challenges the constitutionality of a federal agency's rule making authority. Plaintiffs are four freelance writers and editors from Georgia and New Jersey who operate as independent contractors and respectively publish works covering a variety of topics.[2] [Dkt. 1, at ¶¶ 7–10]. In 2019, Plaintiffs founded an informal coalition of freelancers and independent contractors "seeking to protect their ability to work independently from government overreach," called "Fight for Freelancers." [Id. at ¶ 39]. Together,

---

[1] Because this case is before the Court on a motion to dismiss, the Court presents the following facts as alleged in Plaintiffs' Complaint [Dkt. 1], supplemented by the parties' undisputed material facts where appropriate. See SkyHop Techs., Inc. v. Narra, 58 F.4th 1211, 1219 n.1 (11th Cir. 2023).

[2] Karon Warren resides in Ellijay, Georgia and "provides content for magazines, websites, and corporate brands," and "volunteers her time to help coordinate freelance opportunities for other professional writers." [Dkt. 1, at ¶ 7]. Deborah Abrams Kaplan resides in Westfield, New Jersey and primarily covers "the medical health, and supply chain fields," writing "articles for trade publications, print and web, in addition to writing annual reports, white papers, websites, and editing or ghostwriting articles for companies." [Id. at ¶ 8]. Kimberly Kavin resides in Washington Township, New Jersey and "writes and edits content for magazines, newspapers, and corporate brands, and has authored multiple books." [Id. at ¶ 9]. Jennifer Singer resides in Red Bank, New Jersey and "works with professionals from all backgrounds and a variety of clients as a ghostwriter or editor, and sometimes hires other freelance writers or editors to work with her on specific projects." [Id. at ¶ 10]. Ms. Warren, Ms. Kaplan, Ms. Kavin, and Ms. Singer are referred to collectively herein as "Plaintiffs."

Plaintiffs seek to invalidate a rule recently promulgated by the U.S. Department of Labor (the "DOL")[3] that provides interpretive guidance for determining when a working relationship qualifies as an employer-employee relationship entitled to the protections afforded by the Fair Labor Standards Act, 29 U.S.C. §§ 702 *et al.* (the "FLSA"). [Id. at ¶¶ 1, 4–6].

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. In furtherance of that purpose, the FLSA requires employers to provide certain benefits—such as minimum wage and overtime pay—to their employees, subject to certain exceptions not relevant here. [Dkt. 1, at ¶ 18 (citing 29 U.S.C. §§ 201–19)]. But the FLSA does not require employers to provide those same benefits to independent contractors. [Id. at ¶ 19]. Importantly, the FLSA does not define the distinction between an "employee" and "independent contractor," nor does it codify a clear standard for determining when a worker qualifies as an employee or an independent contractor. [Id. at ¶ 22].

---

[3] Plaintiffs name the DOL, the DOL's Wage and Hour Division, and their respective acting leaders (Julie Su and Jessica Looman) as Defendants (collectively, the "Defendants"). [Dkt. 1, at ¶¶ 11–14].

In the absence of any such standard, courts have historically applied the economic reality test to determine whether a worker qualifies as an employee or an independent contractor.[4] [Id.]. The economic realities test is a multi-factor, totality-of-the-circumstances assessment that requires courts to analyze the specific facts of each case to determine whether the worker depends on the employer or maintains control in the relationship. [See Dkt. 19-1, at ¶ 8]. The relevant factors typically include (1) the worker's opportunity for sharing the business's profit and loss; (2) investment in the materials required to perform the work; (3) the permanency of the working relationship; (4) control over the work to be performed; (5) whether the work being performed is integral to the employer's business; and (6) skill and initiative required to perform the work. [Id. at ¶ 9]. None of those factors are dispositive, nor does any one factor carry more weight than the others. [See id. at ¶¶ 8, 11–13]. Rather, the economic realities test is treated as a true fact-specific assessment courts conduct on a case-by-case basis. [See id.].

In January 2021, the DOL endeavored—for the first time—to define the scope of employment relationships subject to the FLSA's protections by promulgating a rule titled "Independent Contractor Status Under the Fair Labor

---

[4] The economic reality test grew out of a series of opinion letters, fact sheets, and informal guidance issued by the DOL's Wage and Hour Division, which is tasked with enforcing the FLSA. [Dkt. 1, at ¶ 23].

Standards Act," 86 Fed. Reg. 1168 (the "2021 Rule"), which became effective in March 2021. [Dkt. 1, at ¶ 25]. Although the 2021 Rule reiterated the general principles underlying the longstanding economic realities test, the 2021 Rule altered the multi-factor analysis by placing greater emphasis on two "core" factors: (1) the nature and degree of control over the work to be performed; and (2) the worker's opportunity to share in profit and loss. [See id. at ¶¶ 26–27 (alleging these factors are "'more probative' of the underlying question of whether a worker is an employee and should carry greater weight in the analysis" (quoting 29 C.F.R. § 795.105))].

The DOL changed course in October 2022, announcing plans to replace the 2021 Rule with a revised proposal, which was finalized in January 2024 and ultimately codified at 89 Fed. Reg. 1638 (the "2024 Rule"). [Id. at ¶¶ 4, 31]. That proposal removed the 2021 Rule's emphasis on two core factors and enumerated seven factors to be weighed when determining whether an individual qualifies as an employee or an independent contractor. [Id. at ¶¶ 32–33 (explaining that "the use of core factors improperly 'predetermines' the analysis, and that the factors under an economic reality test must be entirely unweighted as a matter of law")]. Those factors are (1) the worker's "opportunity for profit or loss depending on managerial skill"; (2) "investments by the worker and the employer"; (3) "degree

of permanence of the work relationship"; (4) "nature and degree of control" over the work to be performed; (5) "extent to which the work to be performed is an integral part of the employer's business"; (6) the worker's "skill and initiative"; and (7) a catch-all factor stating that "additional factors may be relevant . . . if the factors in some way indicate whether the worker is in business for themselves." [Id. at ¶ 33 (cleaned up) (quoting 29 C.F.R. § 795.110)]. Importantly, the proposal made clear that none of those individual factors carry more weight than the others. [Id. at ¶¶ 35–36].

According to Plaintiffs, the 2024 Rule's multi-factor, totality-of-the-circumstances approach diverges from the 2021 Rule's more predictable guidance and "obscures the line between contractor and employee in an impenetrable fog." [Id. at ¶ 4; see also id. at ¶ 48 ("Under the new rule, significant uncertainty has been created which will chill [Plaintiffs'] future business practices.")]. During the rule making process, Plaintiffs and Fight for Freelancers "commented on the proposed [2024 Rule], attended public hearings, and testified before Congress, expressing concerns about the Rule's effect on its member businesses." [Id. at ¶ 40]. Fight for Freelancers specifically "expressed fears about the uncertainty associated with the [proposed 2024 Rule's] sprawling, multi-factor test," submitting the test offered little-to-no guidance as to how workers could operate as

independent contractors under the 2024 Rule's "confusing factors." [Id. at ¶ 41].
But, according to Plaintiffs, the DOL dismissed those concerns. [Id. at ¶ 42].

Plaintiffs now allege the 2024 Rule will negatively affect their ability to
operate as freelancers (*i.e.*, independent contractors). [See id. at ¶¶ 44–48 (alleging
Plaintiffs fear "they will lose business due to uncertainty or fear of liability risks"
under the 2024 Rule, and "they are worried there may be no way to safely arrange
their relationships to avoid risks to their clients")]. Specifically, Plaintiffs allege
they "will have to alter their business practices and expend resources in an effort to
remain independent in order to keep clients" when proceeding under the 2024
Rule, because the 2024 Rule eliminated the clarity and predictability afforded by
the 2021 Rule's core factor emphasis. [See id. at ¶¶ 46, 48].

The 2024 Rule became effective on March 11, 2024. [Id. at ¶ 31]. Since
then, Ms. Kavin and Ms. Kaplan claim to have already lost job opportunities
because of the alleged uncertainty created by the 2024 Rule. Specifically, Ms.
Kavin claims she has "already had to renegotiate and rewrite [her] contracts with
two magazine clients to protect those clients from potential liability," and she
"expect[s] other clients to follow suit" because they "have expressed concern that
the [2024 Rule] threatens their business model of continuing to work with all kinds
of freelancers." [Dkt. 15-5, at ¶¶ 14–15]. Ms. Kaplan similarly claims she has

already lost job opportunities because of the 2024 Rule, citing one client who said

they "will not use [her] editing services for fear of running afoul of the [2024

Rule]." [Dkt. 15-4, at ¶ 10]. As a result, Ms. Kaplan further fears that "other clients

. . . may make the same choice." [Id.].

## II.   Procedural History

Plaintiffs initiated suit by filing their Complaint in this Court on January 16,

2024. [Dkt. 1]. Therein, Plaintiffs claim Defendants violated sections 706(2)(A)

and (C) of the Administrative Procedure Act (the "APA") and the U.S.

Constitution by promulgating the 2024 Rule because the 2024 Rule is

unconstitutionally vague and inconsistent with the FLSA's original meaning. [See

id. at ¶¶ 50–54, 56–59, 61–63 (alleging the 2024 Rule is unconstitutionally "vague

and amorphous" because it "fails to give [employers] sufficient guidance about

who is covered under the FLSA")]. Plaintiffs seek redress in the form of (1) a

preliminary injunction prohibiting Defendants from enforcing the 2024 Rule, (2) a

court order declaring the 2024 Rule unlawful, and (3) attorneys' fees and costs. [Id.

at 16].

Defendants were not served until March 15, 2024. [Dkt. 10]. On April 3,

2024, the parties filed a joint motion to waive the requirements imposed by Local

Rules 16.2 and 26.1, and stay all relevant litigation deadlines because the parties

agreed this dispute could be resolved based solely on the contents of the relevant certified administrative record. [Dkt. 13]. The Court granted that joint motion two days later and entered a scheduling order adopting the parties' proposed briefing schedule for the instant Cross-Motions. [Dkt. 14].

Plaintiffs filed their Motion for Summary Judgment on April 29, 2024, requesting the Court (1) set aside the 2024 Rule as unlawful under the APA, (2) enjoin Defendants from enforcing the 2024 Rule, and (3) declare the 2021 Rule still in effect. [Dkt. 15]. Defendants responded on May 28, 2024, by filing their Cross-Motion to Dismiss, arguing (1) Plaintiffs lacked standing to pursue their claims and (2) even if Plaintiffs have standing, their claims fail because the 2024 Rule does not violate the APA or the U.S. Constitution. [Dkts. 19, 20].[5] Plaintiffs filed a consolidated opposition to Defendants' Cross-Motion to Dismiss and reply supporting their own Motion for Summary Judgment on July 2, 2024, and Defendants filed a reply supporting their Cross-Motion to Dismiss on July 23, 2024. [Dkts. 35, 41]. Thus, the parties' Cross-Motions are fully briefed and ripe for

---

[5] Defendants' briefs supporting their Cross-Motion to Dismiss and opposing Plaintiffs' Motion for Summary Judgment are identical. [See Dkt. 19-2, at 1 n.1; Dkt. 20, at 1 n.1]. For simplicity, the Court cites to [Dkt. 19-2] exclusively herein when referencing Defendants' relevant arguments.

this Court's consideration.[6]

## DISCUSSION

## I.    Legal Standards

### A.    Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a
"short and plain statement of the claim showing that the pleader is entitled to
relief." FED. R. CIV. P. 8(a)(2). While this pleading standard does not require
"detailed factual allegations" or "labels and conclusions," "a formulaic recitation
of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct.
1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65
(2007)). To withstand a motion to dismiss, "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its
face.'" Id. (quoting Twombly, 127 S. Ct. at 1974). A claim to relief is plausible on
its face when the plaintiff pleads factual content necessary for the court to draw a
reasonable inference that the defendant is liable for the alleged conduct. Id.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true,
and the reasonable inferences [taken] therefrom are construed in the light most

---

[6] The Court also notes that it received multiple amicus briefs from interested non-
parties and has considered those amici curiae before resolving the instant Cross-
Motions. [Dkts. 22, 24, 26, 28, 32, 36, 37].

favorable to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). But the same does not apply to legal conclusions set forth in the complaint. <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 127 S. Ct. at 1965; <u>see also</u> <u>Oxford Asset Mgmt., Ltd. v. Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002) ("Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." (citation omitted)).

## B.   Motion for Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The applicable substantive law determines which facts are "material." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment. Factual disputes that are unnecessary or irrelevant will not be counted." Id. A dispute about a material fact is "genuine" when the evidence could allow a reasonable jury to return a verdict in favor of the non-moving party. Id. at 2511.

The movant bears the initial burden of informing the Court "of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)). The movant can carry that burden by establishing an absence of evidence supporting an essential element of the non-moving party's claims, thereby showing the non-moving party cannot prevail at trial. See Celotex, 106 S. Ct. at 2553. If the movant carries that burden, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. Anderson, 106 S. Ct. at 2514; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (noting that, once the moving party satisfies its initial burden, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts").

At summary judgment, the Court's function is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019) (citing Anderson, 106 S. Ct. at 2514). Therefore, when resolving a motion for summary judgment, the Court must "consider the [entire] record and draw all reasonable inferences in the light most favorable to the non-moving party." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018). But the Court is bound only to draw those inferences that are reasonable. See Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quoting Matsushita, 106 S. Ct. at 1356)).

## II.    Analysis

Plaintiffs seek summary judgment on all claims, requesting the Court enter an order declaring the 2024 Rule invalid and the 2021 Rule still in effect. [Dkt. 15]. Defendants, meanwhile, seek to dismiss Plaintiffs' Complaint for lack of standing or, alternatively, summary judgment in their favor because the 2024 Rule does not violate the APA or the Constitution. [Dkt. 19]. Because standing presents a threshold inquiry, the Court must first determine whether Plaintiffs have standing to pursue their claims before considering the parties' merits-based arguments. See

<u>Corbett v. Transp. Sec. Admin.</u>, 930 F.3d 1225, 1228 (11th Cir. 2019) ("[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (quotation omitted)); <u>Coastal Conservation Ass'n v. Locke</u>, No. 2:09-CV-641-FTM-29SPC, 2011 WL 4530631, at *11 (M.D. Fla. Aug. 16, 2011) ("Because the issue of standing is a threshold matter, the Court must first address the Defendants' challenge to [the plaintiff's] right to pursue the claims articulated in its Complaint.").

"[S]tanding is a necessary component of [federal] jurisdiction." <u>Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.</u>, 557 F.3d 1177, 1190 (11th Cir. 2009). Under Article III of the Constitution, federal jurisdiction is limited to "cases" and "controversies." U.S. Const. art. III, § 2. To establish standing, plaintiffs must show (1) they suffered an injury-in-fact (2) that was caused by the challenged conduct and (3) is likely to be redressed by a favorable court ruling. <u>Lujan v. Defs. of Wildlife</u>, 112 S. Ct. 2130, 2136 (1992); <u>Steel Co. v. Citizens for a Better Env't</u>, 118 S. Ct. 1003, 1017 (1998) (stating that the "party invoking federal jurisdiction bears the burden of establishing its existence" (citing <u>FW/PBS, Inc. v. Dallas</u>, 110 S. Ct. 596, 607–08 (1990))). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

successive stages of litigation." <u>Lujan</u>, 112 S. Ct. at 2136 (citations omitted).

Where multiple plaintiffs bring suit, "[a]s long as one plaintiff . . . has standing,

[the] other plaintiffs may remain in the suit without a standing injury." <u>Bayou</u>

<u>Lawn & Landscape Servs. v. Johnson</u>, 173 F. Supp. 3d 1271, 1281–82 (N.D. Fla.

2016).

Here, Defendants' standing argument focuses on the injury-in-fact element.

To establish an injury-in-fact, a plaintiff "must show that he has sustained or is

immediately in danger of sustaining some direct injury as the result of the

challenged official conduct, and the injury or threat of injury must be 'real and

immediate,' not 'conjectural or hypothetical.'" <u>City of Los Angeles v. Lyons</u>, 103

S. Ct. 1660, 1662 (1983) (citations omitted); <u>see also</u> <u>Fla. State Conference of</u>

<u>N.A.A.C.P. v. Browning</u>, 522 F.3d 1153, 1159 (11th Cir. 2008) ("[T]he plaintiff

must have suffered, or must face an imminent and not merely hypothetical prospect

of suffering, an invasion of a legally protected interest resulting in a concrete and

particularized injury." (quotation omitted)). When a plaintiff seeks injunctive or

declaratory relief—as Plaintiffs do here—they must additionally show they are

likely to suffer future harm if the challenged conduct is not enjoined.[7] <u>See</u> <u>Houston</u>

---

[7] Though Article III standing discussions typically refer to injunctive relief, the
same standard applies to declaratory relief. <u>See</u> <u>A&M Gerber Chiropractic LLC v.</u>
<u>GEICO Gen. Ins. Co.</u>, 925 F.3d 1205, 1210 (11th Cir. 2019) ("Echoing the 'case or

v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328–29 (11th Cir. 2013) ("In addition to past injury, a plaintiff seeking injunctive relief must show a sufficient likelihood that he *will* be affected by the allegedly unlawful conduct in the future."). In other words, where a plaintiff seeks injunctive or declaratory relief, they must establish both a concrete and particularized past injury, and a real and immediate threat of a realistic future injury resulting from the challenged conduct. See id. at 1329 ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." (quotation omitted)); Corbett, 930 F.3d at 1233 (stating that the future injury must "be substantially likely to actually occur, meaning that the threatened future injury must pose a realistic danger and cannot be merely hypothetical or conjectural").

Defendants argue Plaintiffs fail to satisfy the injury-in-fact requirement because Plaintiffs allege only hypothetical and speculative harm. [Dkt. 19-2, at 3]. Specifically, Defendants argue Plaintiffs cannot establish they either suffered a past injury or face an imminent threat of future harm caused by the 2024 Rule because Plaintiffs are freelance writers seeking engagement, not employers subject

controversy' requirement of Article III, the Declaratory Judgment Act 'provides that a declaratory judgment may only be issued in the case of an actual controversy.'" (quotation omitted)).

to the FLSA's requirements. [Id. at 7–13]. In response, Plaintiffs argue the 2024 Rule has (1) already prompted one Plaintiff "to stop working with subcontractors to avoid unwanted liability"; (2) "created tremendous uncertainty as to whether and to what extent Plaintiffs can remain contractors themselves"; and (3) "forced Plaintiffs to make changes to their businesses." [Dkt. 35, at 1–2]. Defendants reply that Plaintiffs' "alleged harm is based on nothing but speculative fears and imagined risks prompting self-initiated actions." [Dkt. 41, at 2]. The Court agrees with Defendants and finds Plaintiffs fail to adequately allege they are likely to suffer real and immediate future harm from the 2024 Rule.

Plaintiffs' alleged future injury stems solely from their subjective concerns about the 2024 Rule's fact-intensive nature. They do not allege that—if they continue to operate their respective freelancing businesses the way they did under the 2021 Rule—they necessarily *will* be classified as employees. [See Dkt. 1, at ¶¶ 44–45)]. Rather, they allege that, because the 2024 Rule adopts a fact-specific, multi-factor approach, they *may* qualify as employees in some instances and, thus, *may* lose future work opportunities. [Id.]. In reality, Plaintiffs take issue with the perceived "uncertainty" resulting from the 2024 Rule's fact-specific approach. [See id. at ¶ 48 ("Under the [2024 Rule], significant uncertainty has been created which will chill [Plaintiffs'] future business practices.")]. But that perceived

"uncertainty" is precisely what forecloses Plaintiffs' ability to pursue their claims.

The Eleventh Circuit has made clear that, to satisfy standing to pursue claims for injunctive and declaratory relief, plaintiffs must establish a "threatened future injury [that] pose[s] a realistic danger," not one that is "merely hypothetical or conjectural." Corbett, 930 F.3d at 1233. By definition, the 2024 Rule's fact-specific approach cannot pose a realistic danger to Plaintiffs' ability to operate as independent contractors because the ultimate classification may change from case-to-case. Sure, Plaintiffs *may* qualify as independent contractors in one instance and employees in another, but that conjectural possibility is not enough to establish standing. See id. at 1236–38 (finding plaintiff lacked standing to pursue injunctive relief even where the court "recognize[d] there[] [was] a chance that [he] might" suffer a future harm because "that is not enough under our case law to show a substantial likelihood of future injury"); see also Bowen v. First Fam. Fin. Servs., Inc., 233 F.3d 1331, 1340 (11th Cir. 2000) (observing that a "perhaps or maybe chance" of an injury occurring is not enough for standing).

In Corbett, the Eleventh Circuit found that a frequent flyer did not satisfy the injury requirement when he feared that the Transportation Security Administration's new random screening policy would subject him to future harm. 930 F.3d at 1237, 1240. The court reasoned that parties "cannot manufacture

standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending . . . ." Id. at 1239. Because the plaintiff could not demonstrate "that the possible harm of maybe having to undergo mandatory AIT screening at some indeterminate time is impending," "his subjective fear of this harm [was] not sufficient to create standing." Id.

Likewise, the Supreme Court denied standing when a citizen challenged a police department's regular use of the chokehold technique during arrests. Lyons, 103 S. Ct. at 1663, 1671. In Lyons, the Court found that "among the countless encounters between the police and the citizens of . . . Los Angeles, there w[ould] be certain instances in which strangleholds w[ould] be illegally applied." Id. at 1668. However, "it [was] . . . no more than speculation to assert either that Lyons himself w[ould] again be involved in one of those unfortunate instances, or that he w[ould] be arrested in the future and provoke the use of [the] chokehold." Id.; see also Corbett, 930 F.3d at 1237 ("And in Lyons, the Supreme Court relied in part on the recognition that not every 'traffic stop, arrest, or other encounter between the police and a citizen' will result in 'the police [acting] unconstitutionally and inflict[ing] injury without provocation or legal excuse.'" (quoting Lyons, 103 S. Ct. at 1668)).

As was the case in <u>Corbett</u> and <u>Lyons</u>, Plaintiffs here seek relief from a speculative harm—the unpredictable nature of the 2024 Rule's fact-specific, totality-of-the-circumstances test. But the 2024 Rule's multi-factor test is unpredictable *because* it is a fact-specific, totality-of-the-circumstances test. Practically speaking then, if a court down the road finds that Plaintiffs qualified as employees in a specific case, it will be because the facts of that case reflected an employee-employer relationship, not an independent contractor relationship.

Because the 2024 Rule's multi-factor test is inherently unpredictable, the Court finds Plaintiffs' fears of being classified as employees to be hypothetical and conjectural under <u>Corbett</u> and <u>Lyons</u>, thus failing to satisfy Article III's injury-in-fact requirement. This Court accordingly holds that Plaintiffs lack standing to pursue their claims for injunctive and declaratory relief.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs lack standing to pursue their claims. Accordingly, Defendants' Cross-Motion [Dkt. 19] is **GRANTED**, Plaintiffs' Motion [Dkt. 15] is **DENIED**, and Plaintiffs' Complaint [Dkt. 1] is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 7th day of October, 2024.

_____

**RICHARD W. STORY**
United States District Judge